815 F.2d 702
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Thelma CAVANAUGH, Petitioner,
v.
ISLAND CREEK COAL COMPANY, Director, Office of Workers'
Compensation Programs, United States Department of
Labor and Benefits Review Board, Respondents.
 No. 86-3212.
 United States Court of Appeals, Sixth Circuit.
 March 10, 1987.
 
 Before MARTIN and NELSON, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Thelma Cavanaugh, wife of deceased coal miner William Cavanaugh, appeals from the decision of the Benefits Review Board denying her claim for benefits under the Black Lung Benefits Act, 30 U.S.C. Secs. 901 et seq. Appellant argues that the ALJ's conclusions that her husband had worked less than 25 years in the coal mine before 1971, and that the interim presumption had been rebutted pursuant to 20 C.F.R. Sec. 727.203(b)(3), are not supported by substantial evidence.
 
 I.
 
 2
 Mr. Cavanaugh was a coal miner in underground coal mines for many years. His last day of work was June 23, 1973. At that time, he was diagnosed as having lung cancer for which he underwent surgery. He died on November 6, 1974 at the age of 58.
 
 
 3
 Appellant herein filed her claim for black lung benefits on May 13, 1976. Her claim was initially approved by the Department of Labor; however, the employer, Island Creek Coal Co., challenged the determination and requested a hearing. A hearing was held on April 12, 1983, before Administrative Law Judge (ALJ) Murty. The following evidence is part of the record.
 
 
 4
 Appellant testified that when she married her husband on June 5, 1938, he had already been working in underground coal mines for a couple of years. She listed the names of several coal mining companies he worked for from 1936 to 1938, 1938 to 1939, 1947 to 1948, and 1948 to 1950. She testified that he continued to work in the coal mines until 1973, except for a very short period of time. He worked as a foreman in underground coal mines, often seven days a week, until he was unable to return to the mines. She testified that her husband had suffered from shortness of breath for a couple of years before his lung cancer was discovered and that he would often cough up dust when he returned from the coal mines.
 
 
 5
 In the record, there are two affidavits stating that Mr. Cavanaugh had worked at the coal mining company of Bell & Zoller from 1948 to November 24, 1950. There are three affidavits stating that he had worked at Norton Coal Corporation from 1947 to 1948. On the deceased's application for black lung benefits, which he had filed on December 28, 1973, he stated that he had worked for a coal mine operator for twenty-four years. Island Creek Coal Co.'s records establish that Mr. Cavanaugh worked there from January 25, 1951 to July 9, 1973. There are no earning statements in the record, and there are no affidavits covering the years 1936 to 1946.
 
 
 6
 The medical evidence reveals that in July of 1973, Mr. Cavanaugh had a portion of his right lung removed and he was diagnosed as having bronchogenic carcinoma--cancer of the lung. At that time, his primary doctor was Dr. Larsen, although Dr. Gardner conducted the surgery. Prior to the surgery and the discovery of cancer, Dr. Larsen noted that the deceased was suffering from a loss of breath, was very nervous and apparently had a drinking problem. He reported that Mr. Cavanaugh complained of feeling sick and had experienced "swelling of the face, weakness and productive cough over the past several months." (Emphasis added). Dr. Larsen stated further that the patient had occasional wheezing and that his pulmonary findings, including his reading of a chest x-ray, were consistent with chronic pulmonary disease, emphysema and bronchitis.
 
 
 7
 After the deceased's cancer surgery, Dr. Larsen saw him on several occasions, as did a number of other doctors upon Larsen's request. For a time, it appeared that Cavanaugh was improving, and it was noted that his lungs appeared clear. However, while it was originally believed that there had been no metastasis connected with his lung cancer,[1] it was subsequently discovered that there had been some metastasis. As a result, it was necessary to have a tumor removed from Mr. Cavanaugh's brain. He never recovered, having experienced complications due to numerous convulsions. He died on November 6, 1974. Dr. Larsen signed his death certificate stating that he had died of metastatic adenocarcinoma of the lung. No autopsy was ever conducted.
 
 
 8
 Upon the advice of his attorney, the deceased was seen by Drs. West and Calhoun in April of 1974. Dr. West noted in Cavanaugh's medical history that Cavanaugh had had trouble breathing for several years before his lung surgery. Dr. West reported that Cavanaugh's lungs were clear to percussion and auscultation, that his rib cage was fixed with "minimal excursion." Dr. West concluded from reading an x-ray that Cavanaugh had "intense emphysema." He also concluded that Cavanaugh's shortness of breath was due to coal miner's pneumoconiosis and that the miner was totally and permanently disabled. No x-rays were taken, and no tests were conducted.
 
 
 9
 Dr. Calhoun reported that the miner had had trouble breathing for two years before his surgery for cancer, and that the miner had a chronic hacking cough. He observed that Cavanaugh's chest was enlarged and was barrell-shaped in appearance, and that his ribs had widened. He noted that Cavanaugh's neck muscles had thickened from his attempts to breathe. He stated that an x-ray he had taken was positive for pneumoconiosis, and that the pulmonary function studies performed by him, and read by Dr. Pitzer, were positive for pneumoconiosis. He concluded that the miner has "become totally and permanently disabled from pulmonary disease, and the fact that he had cancer of his right lung is irrelevant, incompetent and immaterial as this patient's real pulmonary disease is concerned." He also opined that the pulmonary disease resulted from Cavanaugh's coal mining and that it was pneumoconiosis.
 
 
 10
 A biopsy was performed on tissue taken from Cavanaugh's lung and several doctors diagnosed that he had some form of pneumoconiosis. Dr. Kawas, a pathologist, wrote on November 29, 1979, that the specimen not only revealed bronchogenic carcinoma, but also anthraco-pneumoconiosis, secondary pulmonary fibrosis and emphysema. He stated that the pneumoconiosis was severe and disabling. On January 23, 1980, Dr. Kawas modified his statements, reporting that Cavanaugh "had moderately severe anthraco-pneumoconiosis and focal silico-pneumoconiosis."
 
 
 11
 Dr. Hansbarger, a pathologist, reviewed the slides on May 21, 1980. He concluded that Cavanaugh suffered from epidermoid carcinoma and pulmonary anthraco-silicosis of a moderate degree. He believed a diagnosis of pneumoconiosis was warranted.
 
 
 12
 Dr. Pitzer, a pathologist, concluded that the biopsy tissue evidenced that Cavanaugh had pneumoconiosis as well as bronchogenic carcinoma and emphysema. He also opined that the disability resulting from the pneumoconiosis possibly could be significant and progressive.
 
 
 13
 Dr. Cymbala also reviewed the slides, and concluded that Cavanaugh had moderately advanced to advanced coal miner's pneumoconiosis. However, it should be noted that none of the above doctors suggested that there was a causal connection between the pneumoconiosis and Mr. Cavanaugh's death.
 
 
 14
 Dr. Kleinerman also reviewed the specimen. Without an autopsy report, he would not comment on the cause of death, but he concluded that the specimen evidenced primary carcinoma and simple coal workers' pneumoconiosis. He did not believe there was any evidence that the pneumoconiosis effected the development of the bronchogenic carcinoma.
 
 
 15
 Dr. Kress reviewed all the medical evidence at the employer's request. He reasoned that the evidence, particularly Dr. Kleinerman's report, supported a conclusion that Cavanaugh only had "early, simple coal workers' pneumoconiosis." He opined that Cavanaugh's death was not related to the pneumoconiosis, but was "due to the metastatic involvement of his brain from the previously resected bronchogenic carcinoma."
 
 
 16
 In his opinion dated August 9, 1983, the ALJ first concluded that appellant had only established that Cavanaugh had worked twenty-two years in coal mines before June 30, 1971. He considered appellant's unsubstantiated testimony to be insufficient to establish additional years of coal mine employment. Next, the ALJ concluded that appellant was entitled to the interim presumption of benefits pursuant to 20 C.F.R. Sec. 727.203(a)(1) because of the biopsy evidence. Finally, the ALJ concluded that the presumption was rebutted by the employer. He reasoned that the medical evidence did not establish a serious illness prior to the lung cancer, and that the reports of Dr. Larsen and others supported a conclusion that the death was not caused in any way by the pneumoconiosis. He specifically discredited the reports of Drs. West and Calhoun, concluding that they were unsupported and in direct conflict with other evidence. The ALJ also believed that Dr. Kress had correctly assessed Cavanaugh's medical history, particularly since Cavanaugh's treating physicians had not discussed the pneumoconiosis or found the deformities Dr. Calhoun had discovered.
 
 
 17
 Upon review, the Benefits Review Board, on February 21, 1986, concluded that the ALJ's finding of twenty-two years of coal mine employment had not been shown to be erroneous. The Board also found that there was no error in the ALJ's placing great emphasis on Dr. Kress' report, and that the ALJ's conclusions were supported by substantial evidence. This timely appeal followed.
 
 II.
 
 18
 Jurisdiction to review the final decisions of the Benefits Review Board is found in section 422(a) of the Black Lung Benefits Act, 30 U.S.C. Sec. 932(a), incorporating section 21(c) of the Longshoremen's and Harbor Workers' Compensation Act, as amended, 33 U.S.C. Sec. 921(c). See Director, Office of Workers' Compensation Programs v. Rowe, 710 F.2d 251, 253 (6th Cir.1983). Our standard of review on appeal is limited to scrutinizing the Board's decision for "errors of law and for adherence to the statutory standard governing the Board's review of the administrative law judge's factual determinations." Id. at 254 (quoting Bumble Bee Seafoods v. Director, Office of Workers' Compensation Programs, 629 F.2d 1327, 1329 (9th Cir.1980)). See also Gibas v. Saginaw Mining Co., 748 F.2d 1112, 1116 (6th Cir.1984), cert. denied, 105 S.Ct. 2357 (1985).
 
 
 19
 Pursuant to the statute, the Board is bound by the ALJ's factual findings if they are supported by substantial evidence when reviewing the record in its entirety. See 30 U.S.C. Sec. 932(a), incorporating 33 U.S.C. Sec. 921(b)(3). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Even if the Board or this court would resolve the factual issues differently, the ALJ's factual findings must stand if they are supported by substantial evidence. Cf. Kinsella v. Schweiker, 708 F.2d 1058 (6th Cir.1983).
 
 
 20
 Appellant first argues that the ALJ's determination that her husband had worked less than twenty-five years in the coal mines before June 30, 1971, is not supported by substantial evidence. She supports this assertion by pointing out that there is no evidence in the record which suggests that her husband did not work in the coal mines during the years she testified to. This argument ignores the fact that it is the claimant who has the burden of establishing the number of years her husband worked in the coal mines; it is not the employer's burden to rebut a claimant's mere assertion. We agree with the Board that the ALJ's finding of fact as to the number of years of employment is supported by Mr. Cavanaugh's application for benefits and the affidavits of record. We affirm this finding.
 
 
 21
 As a second challenge, appellant argues that the ALJ's determination that the employer had met its burden of rebuttal under 20 C.F.R. Sec. 727.203(b)(3) is not supported by substantial evidence.[2] Section 727.203(b)(3) provides:
 
 
 22
 (b) Rebuttal of interim presumption. In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption in paragraph (a) of this section shall be rebutted if:
 
 
 23
 ....
 
 
 24
 (3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment....
 
 
 25
 Therefore, the issue is whether the ALJ's finding that Mr. Cavanaugh's death did not arise in whole or in part from his coal mine employment is supported by substantial evidence. This inquiry is a factual determination of causation--whether the miner's coal mine employment contributed to his death. See Gibas, 748 F.2d at 1120; Carozza v. United States Steel Corp., 727 F.2d 74, 78 (3d Cir.1984). Therefore, "[i]f an employer is able to prove that pneumoconiosis played no part in causing a miner's disability" or death, then the employer has successfully rebutted the interim presumption pursuant to section 727.203(b)(3). Gibas, 748 F.2d at 1120.
 
 
 26
 While there is no disagreement that the coal miner in the instant case had pneumoconiosis, there is a conflict as to the severity of that condition. We believe that the ALJ's resolution of this conflict is rational and not clearly erroneous. The ALJ's negative credibility determinations with regard to the opinions of Drs. West and Calhoun are well reasoned and convincing, and we believe they are supported by substantial evidence in the record. See Moseley v. Peabody Coal Co., 769 F.2d 357, 360 (6th Cir.1985). Similarly, the ALJ's conclusion that Cavanaugh's bronchogenic carcinoma was not related to his coal mine employment, or even aggravated by his pneumoconiosis, is supported by substantial evidence--in particular, Dr. Kleinerman's report. Finally, we believe that the ALJ's conclusion that Mr. Cavanaugh died of bronchogenic carcinoma with metastasis, and that his death was not related to his pneumoconiosis, is a rational conclusion to reach in light of the record before this court. As the ALJ noted, Cavanaugh's doctors during his last few months of life, including Dr. Larsen, never mentioned pneumoconiosis as a complicating or contributing factor in his demise, and concluded that his death was a result of his cancer. We cannot say that the ALJ's factual determination in this regard is clearly erroneous, and we affirm this finding.[3]
 
 
 27
 Accordingly, we AFFIRM the order of the Benefits Review Board.
 
 
 28
 DAVID A. NELSON, Circuit Judge, concurring.
 
 
 29
 Although I concur in the court's judgment and most of its opinion, I have some difficulty with the affirmance of the ALJ's determination that Mr. Cavanaugh had worked in the coal mines less than 25 years. The affidavits of record establish a minimum coal mine work history of 26 years, and in the face of those affidavits it does not seem to me that the mere fact that the person who helped Mr. Cavanaugh complete his claim for benefits wrote down "24 years" in response to a question about the length of his employment constitutes substantial evidence that the affidavits are incorrect.
 
 
 30
 I agree with the court, however, that the decision denying the claim for benefits ought to be affirmed. 28 C.F.R. Sec. 727.204(a) provides that eligible survivors of a miner who died on or before March 1, 1978, after having worked in the mines for 25 or more years prior to June 30, 1971, are entitled to benefits "unless it is established that at the time of death such miner was not partially or totally disabled due to pneumoconiosis...." In the instant case the ALJ determined that Mr. Cavanaugh was neither partially nor totally disabled due to pneumoconiosis, and I believe that determination to be supported by substantial evidence.
 
 
 
 [1]
 Metastasis is the "transfer of disease from one organ or part to another not directly connected with it. It may be due either to the transfer of pathogenic microorganisms ... or to transfer of cells, as in malignant tumors." Dorland's Illustrated Medical Dictionary 909 (24th ed. 1965)
 
 
 [2]
 We note that the employer has never challenged the ALJ's determination that appellant successfully invoked the interim presumption under 20 C.F.R. Sec. 727.203(a)(1). Since this is not challenged, we need not address appellant's assertion that other medical evidence would have invoked the interim presumptions pursuant to Sec. 727.203(a)(2) and (4)
 
 
 [3]
 We reject appellant's assertion that the ALJ placed undue emphasis on Dr. Kress' report. While Dr. Kress was not an examining or treating physician, he reviewed all the evidence and expressed an opinion as to Cavanaugh's condition. The ALJ, we believe, merely agreed with Dr. Kress' reading of the various records, stating his belief that "Dr. Kress is correct in his assessment." The ALJ did not ignore the other medical evidence; to the contrary, we find that he carefully considered the inconsistencies in the record, and concluded, as did Dr. Kress, that the coal miner's death was not related to his coal mine employment. The ALJ did not simply rely on Dr. Kress' report in making this finding