**Shelly MOSELEY, Petitioner,**

v.

**PEABODY COAL COMPANY, Old Republic Companies; Director, Office of Workers' Compensation Programs, United States Department of Labor; Benefits Review Board, Respondents.**

No. 84–3496.

United States Court of Appeals,
Sixth Circuit.

Argued June 7, 1985.
Decided July 31, 1985.

Thomas M. Rhoads, argued, Rhoads & Rhoads, P.S.C., Madisonville, Ky., for petitioner.

Benefits Review Bd., Washington, D.C.; Joseph R. Bednarik, Office of the Solicitor, U.S. Dept. of Labor, Washington, D.C.; John L. Kilcullen, Kilcullen, Wilson & Kilcullen, and Mark E. Solomons, argued, Washington, D.C., for respondents.

Before MERRITT and WELLFORD, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

CELEBREZZE, Senior Circuit Judge.

Claimant-petitioner Shelly Moseley petitions from a decision of the Benefits Review Board affirming the Administrative Law Judge's (ALJ) denial of benefits under the Black Lung Act, *see* 30 U.S.C. §§ 801–962 (1982). Moseley asserts that the ALJ's determination is not supported by substan-

tial evidence and that the ALJ erroneously concluded that the interim presumption had been rebutted. After carefully reviewing the record, we affirm.

Moseley was employed as a coal miner for virtually his entire adult life and has smoked approximately one-half pack of cigarettes a day since childhood. In 1974, Moseley filed for benefits under the Black Lung Act, claiming that he was totally disabled due to pneumoconiosis. A hearing was held before an ALJ and medical evidence was adduced by both sides. The ALJ initially concluded that based upon the X-rays and documented physicians' opinions submitted into evidence Moseley was entitled to the interim presumption under 20 C.F.R. §§ 727.203(a)(1) & (a)(4) (1985),[1] respectively. The ALJ went on, however, to conclude based upon the testimony of three doctors that Moseley was not totally disabled due to pneumoconiosis; rather, according to the ALJ, Moseley's disability was attributable to heart disease. Thus, the ALJ held that the interim presumption had been rebutted, see 20 C.F.R. § 727.-203(b)(3) (1984),[2] and denied benefits. The Benefits Review Board affirmed the decision of the ALJ as supported by substantial evidence.

█ At first blush, the ALJ's opinion appears to be internally inconsistent. The ALJ concluded that the documented physicians' opinions presented into evidence sufficed both to invoke the interim presumption under 20 C.F.R. § 727.203(a)(4) (1985) and to rebut the same presumption under 20 C.F.R. § 727.203(b)(3) (1985). Obviously, the same doctors' reports cannot both raise and rebut the interim presumption. This apparent incongruity is due to the Benefits Review Board's prior interpretation of Section 727.203(a)(4) under which the presumption could be triggered by the introduction of only one positive physician's opinion, regardless of the number of persuasiveness of the contrary opinions. See Consolidation Coal Co. v. Sanati, 713 F.2d 480, 481 (4th Cir.1983). In light of court decisions holding that all relevant documented medical opinions must be considered in determining whether the presumption under Section 727.203(a)(4) is to be invoked, e.g., Consolidation Coal Co. v. Sanati, 713 F.2d 480 (4th Cir.1983), the Board has discontinued this practice, see Bozick v. Consolidation Coal Co., 732 F.2d 64 (6th Cir.1984), rehearing granted and remanded, 735 F.2d 1017, 1018 (6th Cir.1984).

█ Although the improper triggering of the interim presumption under Section 727.203(a)(4) may require reversal in some cases, see Sanati, 713 F.2d at 482, we do not believe that such action is required in the present case. In this case, the ALJ first invoked the interim presumption under Section 727.203(a)(1); therefore, the ALJ's additional determination that the presumption was triggered under Section 727.203(a)(4) in no way affected either party's burden of proof. Moreover, the ALJ meticulously detailed and considered the medical evidence presented, thus creating a sufficient record to review the merits of

---

1. § 727.203 Interim Presumption
   (a) *Establishing interim presumption.* A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, or to have been totally disabled due to pneumoconiosis at the time of death, or death will be presumed to be due to pneumoconiosis, arising out of that employment, if one of the following medical requirements is met:
   (1) A chest roentgenogram (x-ray), biopsy, or autopsy establishes the existence of pneumoconiosis (see § 410.428 of this title);
   . . . .
   (4) Other medical evidence, including the documented opinion of a physician exercising

reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment.

2. This Section provides in the relevant portion as follows:
   (b) *Rebuttal of interim presumption.* In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption in paragraph (a) of this section shall be rebutted if:
   . . . .
   (3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment.

this case. Accordingly, we now proceed to determine if the ALJ's determination is supported by substantial evidence. *See, e.g., Director v. Congleton*, 743 F.2d 428, 429 (6th Cir.1984).

The ALJ relied upon the testimony of three doctors in support of his conclusions that Moseley did not suffer from pneumoconiosis and was disabled due to heart disease. First, Dr. Getty, a pulmonary disease specialist, after performing both an arterial blood gas and ventilatory study on Moseley concluded that there was "no evidence of pneumoconiosis." Second, Dr. Anderson, a board-certified pulmonary disease specialist, examined Moseley. After completing the "usual tests," Dr. Anderson failed to find any evidence of pneumoconiosis. In addition, based upon a stereoscopic X-ray he concluded that Moseley suffered from arteriosclerotic heart disease. Last, the ALJ cited the testimony of Dr. Gallo, who is also a pulmonary specialist. Dr. Gallo put Moseley through a variety of tests, including X-rays, pulmonary function studies, arterial blood gas studies, and an electrocardiogram. Dr. Gallo, like Dr. Anderson, diagnosed Moseley as suffering from arteriosclerotic heart disease with angina pectoris and also diagnosed chronic bronchitis with a possible asthmatic component. Further, Dr. Gallo, like Drs. Anderson and Getty, found that there was no evidence that Moseley had pneumoconiosis.

■ Moseley initially contends that the reports of Drs. Anderson, Gallo, and Getty are insufficient to rebut the interim presumption because they are not phrased in terms of "reasonable medical certainty." The Benefits Review Board once held that the interim presumption could only be rebutted by medical reports expressed in terms of a reasonable degree of medical certainty. *See Drummond Coal Co. v.*

*Freeman*, 733 F.2d 1523, 1526–27 (11th Cir. 1984); *Peabody Coal Co. v. Lowis*, 708 F.2d 266, 273–74 (7th Cir.1983). In light of subsequent Court of Appeals decisions and 20 C.F.R. § 727. 203(a)(4) (1985), the Board has revised its position to allow a "documented opinion of a physician exercising reasoned medical judgment" to rebut the interim presumption. *See Freeman*, 733 F.2d at 1526–27; *Lowis*, 708 F.2d at 273–74. Accordingly, we reject Moseley's contention that the medical reports of doctors used to rebut the interim presumption must be phrased in terms of a reasonable degree of medical certainty.

■ Moseley next argues that the testimony of Drs. Anderson, Getty, and Gallo is not substantial evidence upon which the ALJ could have based his decision. Determinations of whether a physician's report is sufficiently documented and reasoned is a credibility matter left to the trier of fact. *E.g., Director v. Rowe*, 710 F.2d 251, 255 (6th Cir.1983). Similarly, the trier of fact determines the weight to be accorded to the evidence. *E.g., Palmer Coking Coal Co. v. Director*, 720 F.2d 1054, 1058 (9th Cir.1983). Moreover, a reviewing court may not set aside an inference because it finds another more reasonable. *E.g., Peabody Coal Co. v. Benefits Review Board*, 560 F.2d 797, 802 (7th Cir.1977).

■ As with most federal black lung cases, the medical evidence adduced before the ALJ was both voluminous and contradictory. Of eighteen X-rays submitted into evidence nine were negative for pneumoconiosis, six were positive, and three were unreadable.[3] Five ventilatory studies were reviewed by the ALJ. Of the five tests, only one had values which qualified under 20 C.F.R. § 727.203(a)(2) (1985).[4] The other tests reached varying results, but most

---

**3.** Although numerically the negative X-rays outweighed the positive, the ALJ reasoned that the positive readings were more persuasive since two of the readings were made by board-certified "B" readers, *see* 20 C.F.R. § 718.-203(a)(1)(ii)(E) (1985), and one was read by a board-certified radiologist, *see* 20 C.F.R. § 718.-203(a)(1)(ii)(F) (1985). Thus, the ALJ concluded that the positive X-rays sufficed to invoke the interim presumption under 20 C.F.R. § 727.-203(a)(1) (1985).

**4.** Since Mosely is 64 inches tall, a qualifying test must have a FEV, equal to or less than 2.3 and a MVV equal to or less than 92. 20 C.F.R. § 727.203(a)(2) (1985).

showed a positive reaction upon the use of bronchodilators.[5] The ALJ concluded that such improvement in values indicated that Moseley did not have an irreversible impairment. Four blood gas studies were also before the ALJ. Although the first study performed upon Moseley obtained qualifying values under 20 C.F.R. § 727.-203(a)(3) (1985), later tests indicated an improvement in Moseley's oxygen transfer. In fact, the two most recent studies produced non-qualifying values. Finally, besides the reports of Drs. Anderson, Getty, and Gallo, five other physicians' opinions all of which indicated that Moseley suffered from pneumoconiosis were considered by the ALJ. The ALJ accorded little weight to the positive reports of Dr. West and Dr. Traughber because Dr. West failed to perform sufficient objective tests to support his conclusions and admitted that the symptoms which he described were also consistent with other respiratory diseases and because Dr. Traughber failed to indicate the origins of the X-ray which his report relied upon, was unclear concerning what objective tests he performed, and never disclosed the spirometry measurements[6] which he relied upon. As to the remaining three reports by Drs. Calhoun, Crowder, and Johnson, none of whom are pulmonary specialists, the ALJ reasoned that these positive opinions were outweighed by the opinions of Drs. Anderson, Getty, and Gallo.[7]

We believe that the ALJ properly analyzed the evidence before him. The ALJ's decision to accord the reports of Drs. West and Traughber little weight due to their inadequate testing and reasoning is a permissible credibility determination. Also, the ALJ's balancing of the six conflicting medical reports represents a legitimate weighing of the evidence. Finally, in our view, the ALJ's conclusion that Moseley

was disabled due to heart disease was a permissible inference which could be drawn from the evidence. Thus, we reject Moseley's argument that the ALJ's opinion was not supported by substantial evidence.

■ Finally, Moseley asserts that the reports of Drs. Getty, Anderson, and Gallo do not sufficiently rule out the possibility that pneumoconiosis was a contributing cause to his heart disease. Since neither party disputes that the ALJ properly invoked the interim presumption, the question before this Court is whether the ALJ correctly concluded that Moseley's disability "did not arise in whole or in part out of coal mine employment." 20 C.F.R. § 727.203(b)(3) (1985). In this regard, the employer must establish that pneumoconiosis was not a "contributing cause" to the coal miner's disability. *Gibas v. Saginaw Mining Co.,* 748 F.2d 1112, 1120 (6th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985); *Ramey v. Kentland Elkhorn Coal Corp.,* 755 F.2d 485, 492 (6th Cir.1985).

■ Generally, the issue of whether pneumoconiosis is a contributing cause to a miner's disability arises when the ALJ determines that the miner has pneumoconiosis to some extent but that the miner's disability is attributable to another disease. *See Ramey,* 755 F.2d at 490–92 (miner had both pneumoconiosis and heart disease); *Gibas,* 748 F.2d at 1120 (miner had pneumoconiosis and cardiovascular problems). In such cases, the burden is on the employer to establish that pneumoconiosis did not contribute to the disabling disease. *See Ramey,* 755 F.2d at 492 (miner's cardiac condition sole cause of disability); *Gibas,* 748 F.2d at 1114–15 & 1120 (pneumoconiosis found to contribute to cardiovascular problems). In the case at bar, however, not one of the three doctors relied upon by

---

5. Bronchodilators are drugs which relax the bronchial muscles, thus expanding the air passages of the bronchi.

6. Spirometry measurements are measurements of the air entering and leaving the lungs.

7. A report of the Special Fund of Kentucky which found that Moseley was totally disabled due to pneumoconiosis was also before the ALJ. Such reports, of course, are not binding in a federal black lung case and should be evaluated and weighed like any other evidence before the trier of fact.

the ALJ found any evidence of pneumoconiosis. Clearly, if Moseley does not suffer from pneumoconiosis to any extent, pneumoconiosis cannot be a contributing cause to his heart disease. We hold, therefore, that the employer presented sufficient evidence to establish that Moseley's disability did not arise in whole or in part from coal mine employment.

Due to our conclusions that the ALJ's opinion is supported by substantial evidence and that the employer presented sufficient evidence to rebut the interim presumption, we affirm the decision of the Benefits Review Board.