878 F.2d 382
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
George E. PATRIDGE, Petitioner-Appellant,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S.
DEPARTMENT OF LABOR, Respondent-Appellee.
 No. 88-3965.
 United States Court of Appeals, Sixth Circuit.
 July 5, 1989.
 
 Before KENNEDY, NATHANIEL R. JONES, and WELLFORD, Circuit Judges.
 PER CURIAM:
 
 
 1
 The claimant in this black lung case challenges the ALJ's finding that he was not totally disabled as required by 20 C.F.R. Sec. 718.204. While one doctor concluded that the miner's pneumoconiosis did not impair his physical abilities, another indicated that the miner should refrain from "arduous manual labor." Although the claimant did not provide an abundance of information on the exertional requirements of his position as mine mechanic, there was sufficient evidence for the ALJ to conclude that his usual employment did not require "arduous manual labor." Therefore, we affirm the decision of the Benefits Review Board.
 
 I.
 
 2
 The miner, George Patridge, filed a claim for Black Lung Benefits on January 24, 1983. He was 45 years old at the time of the administrative hearing, and established 12 years and 8 months of qualifying coal mine employment. Claimant testified that he worked as a mechanic in the mines, but that he performed other duties as well, such as repairing buggies, watering batteries, and dumping coal cars.
 
 
 3
 The ALJ evaluated the evidence under Part 718 to determine whether the miner was totally disabled due to pneumoconiosis arising out of coal mine employment. He found that the medical reports of record were sufficient to establish the existence of pneumoconiosis pursuant to 20 C.F.R. Sec. 718.202(a)(4). Because the claimant had at least ten years of qualifying coal mine employment, the ALJ also found that the pneumoconiosis arose out of coal mine employment. With respect to the issue of total disability, however, the ALJ concluded that the claimant had not met his burden of proof because he "submitted little evidence about the required physical exertion in his position as a mechanic" and was able to perform his usual coal mine employment, and benefits were denied. The Benefits Review Board affirmed the decision of the ALJ.
 
 II.
 
 4
 Five x-ray interpretations are contained in the record. The first x-ray, taken on December 8, 1982, was read twice. A noncertified reader interpreted the x-ray as positive, but a B-reader interpreted the same film as negative. A December 15, 1982 film was read as positive by an A-reader, but two later x-rays were interpreted as negative by B-readers who were also board-certified radiologists.
 
 
 5
 Three pulmonary function studies and two blood gas studies also were performed. Both of the blood gas studies were non-qualifying, as were two of the ventilatory studies. A non-qualifying study was completed on December 8, 1982; a week later, the last test administered was qualifying.
 
 
 6
 Finally, there are three medical reports of record. Dr. Robert Penman, a pulmonary specialist, examined the claimant on December 8, 1982. He recorded the miner's work, medical, and smoking histories,[1] and conducted a chest x-ray and pulmonary function study. The pulmonary function study was nonqualifying, but the x-ray was interpreted as positive.[2] Dr. Penman, who is not a B-reader, diagnosed coal miners' pneumoconiosis 1/1, and concluded that the claimant's lung function was impaired. He did not, however, assess the degree of impairment.
 
 
 7
 Dr. John E. Myers, Jr., who is board-certified in internal medicine, examined the claimant on December 15, 1982. He performed a physical examination, a blood gas study, a pulmonary function study, EKG, and took a chest x-ray. The blood gas study was nonqualifying, but the ventilatory study was qualifying. Dr. Myers, an A-reader, interpreted the x-ray as positive. He diagnosed coal miners' pneumoconiosis 1/1 and arteriosclerotic heart disease with a history of myocardial infarction and persistent angina with effort. He concluded that the claimant's pneumoconiosis resulted from coal mine employment, and opined that the claimant's pulmonary condition prohibited "arduous manual labor" and that his cardiovascular condition prohibited some forms of normal physical activity.
 
 
 8
 On April 27, 1983, Dr. James Cooper, also a specialist in internal medicine, examined the claimant. Based on a physical examination and various objective tests, Cooper diagnosed probable chronic bronchitis and arteriosclerotic cardiovascular disease with a history of three myocardial infarctions. He found no relationship between the claimant's pulmonary condition and his coal mine employment, and concluded that the claimant had no physical limitations due to pulmonary disease.
 
 III.
 
 9
 This court reviews decisions of the Benefits Review Board for errors of law and its adherence to the statutorily prescribed scope of review. Welch v. Benefits Review Board, 808 F.2d 443, 445 (6th Cir.1986). In the instant case, the court must decide whether the Board properly found the ALJ's denial of benefits to be supported by substantial evidence.
 
 
 10
 Because the miner filed his claim on January 24, 1983, the ALJ properly applied the Part 718 final regulations. See 20 C.F.R. Sec. 718.2. In order to establish entitlement to benefits under Part 718, the claimant must prove that (1) he suffers from pneumoconiosis; (2) the pneumoconiosis arose of of his coal mine employment; and (3) he is totally disabled by pneumoconiosis. 20 C.F.R. Secs. 718.202, .203, .204. Each of these elements must be proven by a preponderance of the evidence, except when the claimant is aided by a presumption.
 
 
 11
 In the instant case, the ALJ found that pneumoconiosis was established under 20 C.F.R. Sec. 718.202(a)(4). Based on the rebuttable presumption contained in 20 C.F.R. Sec. 718.203(b), he also found that the claimant's pneumoconiosis arose from his coal mine employment. Neither of these findings are contested on appeal, and the Director expressly concedes that the claimant has established the existence of pneumoconiosis arising out of his coal mine employment. See Brief of Appellee at 8.
 
 
 12
 The only element challenged, therefore, is that of total disability due to pneumoconiosis. 20 C.F.R. Sec. 718.204 provides the applicable criteria for proving such disability. Subsection (b) defines total disability as pneumoconiosis which prevents the miner from (1) performing his usual coal mine employment and (2) engaging in gainful employment near his residence requiring skills similar to those needed in his previous coal mine employment. 20 C.F.R. Sec. 718.204(b)(1), (b)(2).
 
 
 13
 Subsection (c) provides the applicable criteria for determining total disability.[3] The ALJ concluded that total disability could not be established under Sec. 718.204(c)(1), (c)(2), (c)(3), or (c)(5) because the objective tests of record were non-qualifying and because the miner is not deceased. These findings are supported by substantial evidence and are not seriously challenged. The controversy centers on the negative finding under subsection (c)(4), total disability based on a physician's reasoned medical judgment.
 
 
 14
 Dr. Penman's report did not address the degree of impairment, and could not be used to establish total disability. While both Dr. Myers and Dr. Cooper assessed the degree of claimant's impairment, their conclusions differed. Dr. Myers stated that the claimant's pulmonary condition prohibits arduous manual labor and his cardiovascular condition prohibits some forms of normal physical activity. Four months later, Dr. Cooper reported that claimant suffered no physical limitations due to pulmonary disease.
 
 
 15
 On a "Description of Coal Mine Work and Other Employment" form, the claimant indicated that his work as a mine mechanic entailed sitting for eight hours, standing for two hours, and frequently crawling and lifting 25 pounds. The claimant testified that he also repaired buggies, watered batteries, and dumped coal cars. He indicated that his friends helped him, explaining that they would turn off the power box and wait for him as they walked out.
 
 
 16
 Based on evidence submitted by the claimant, the ALJ found that claimant's employment as a mine mechanic did not involve arduous physical labor. Thus, even accepting the medical opinion most favorable to the claimant--that of Dr. Myers--the ALJ concluded that the claimant could perform his usual coal mine employment. This finding is also supported by substantial evidence.
 
 
 17
 As the trier of fact, the ALJ must evaluate the credibility and weight to be accorded evidence of record. Moseley v. Peabody Coal Co., 769 F.2d 357, 360 (6th Cir.1985). A reviewing tribunal cannot set aside an ALJ's inferences merely because a contrary conclusion appears more reasonable, so long as the decision is supported by substantial evidence. Id. at 360; Engle v. Director, OWCP, 792 F.2d 63, 64 (6th Cir.1986).
 
 
 18
 A medical opinion need not be phrased in terms of "total disability" before total disability can be established. Instead, it is sufficient to list the impairment which prohibits the claimant from performing his usual coal mine work. Black Diamond Coal Mining Co. v. Benefits Review Board, 758 F.2d 1532, 1534 (11th Cir.1985). At the very least, however, the evidence must be sufficient to allow a proper comparison between a miner's usual employment and his impairment. Cf. Hillibush v. United States Department of Labor, 853 F.2d 197, 205-06 (3d Cir.1988). It is the claimant's responsibility to establish the exertional requirements that his job entails. Cregger v. United States Steel Corp., 6 BLR 1-1219 (1984).
 
 
 19
 The ALJ was correct to find that Dr. Penman's report could not be used to determine total disability. He also properly concluded that Dr. Myers' report did not help claimant. A comparison of the claimant's work requirements (sitting 8 hours, standing 2 hours) with Dr. Myers' limitations (no arduous physical labor) was appropriate to determine whether the claimant was totally disabled.
 
 
 20
 The ALJ concluded that the claimant's work did not constitute arduous labor, and this conclusion should be disturbed. The ALJ evaluated all of the medical evidence and considered all of the lay testimony. In addition, he considered the type of "help" the miner required. All of these factors support his decision. Moreover, Dr. Cooper, who was the last doctor to examine the claimant, concluded that the claimant had no physical limitations.[4]
 
 
 21
 The claimant also contends that the ALJ erred by not fully inquiring into all matters at issue. Specifically, Patridge argues that it was the ALJ's duty to secure information concerning the claimant's usual coal mine employment. Citing 20 C.F.R. Sec. 725.455. Although the former regulations required such action, see 20 C.F.R. Sec. 725.460(a), the current regulations do not. In addition, a claimant who is represented by counsel "alone is responsible for any tactical errors in such preparation and presentation." Somonick v. Rochester & Pittsburgh Coal Co., 6 BLR 1-893, 1-895 (1984).
 
 IV.
 
 22
 For the reasons stated above, the decision of the Benefits Review Board is AFFIRMED.
 
 
 
 [1]
 Claimant smoked for twenty years
 
 
 [2]
 The same x-ray was interpreted as negative by a B-reader
 
 
 [3]
 Subsection (d) indicates that a finding of total disability cannot be made solely on the miner's statements or testimony, and subsection (e) states that an ALJ may evaluate "[c]hanged circumstances of employment indicative of a miner's reduced ability to perform his or her usual coal mine work," such as (1) a reduced ability to perform customary duties without help; (2) reduced rapidity, continuity, or efficiency; or (3) request to perform less vigorous duties or duties in a less dusty part of the mine, when determining total disability. 20 C.F.R. Sec. 718.2049(d)(2), (e)(3)
 
 
 [4]
 The claimant also argues that the ALJ should have concluded that the claimant could not work in the mines because of the dust. Such a finding, however, would not have established total disability. Under Sec. 718.204(b), the claimant's pneumoconiosis must prevent him from performing his usual coal mine work and similar work outside the mines. There is no evidence that Patridge could not work as a mechanic for a non-mine employer