883 F.2d 75
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ruby PORTER, Widow of Roscoe Porter, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, Respondent.
 No. 88-3539.
 United States Court of Appeals, Sixth Circuit.
 Aug. 22, 1989.
 
 Ben. Rev. Bd.
 AFFIRMED.
 Before ENGEL, Chief Circuit Judge, and MERRITT and KRUPANSKY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Ruby Porter (Ruby Porter), petitioner, has filed a petition to review the final decision of the Benefits Review Board (Board), respondent, which had affirmed the determination of the Administrative Law Judge (ALJ), who had denied her application for widow's disability benefits under the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. Sec. 801 et seq., as amended by the Black Lung Benefits Act of 1972, 30 U.S.C. Sec. 901 et seq. (the Act) as the widow of Roscoe Porter (Roscoe Porter).
 
 
 2
 Initially, the ALJ had concluded that, because Roscoe Porter had worked more than ten years as a coal miner and because Ruby Porter had established the existence of pneumoconiosis by a preponderance of the x-ray evidence of record, Ruby Porter had properly invoked a presumption that her husband had been totally disabled from pneumoconiosis at the time of his death, pursuant to the standard established under 20 C.F.R. Sec. 727.203(a)(1).[1] The ALJ thereupon concluded that Ruby Porter was not entitled to disability benefits because, pursuant to the administrative regulations listed at 20 C.F.R. section 727.203(b)(4), the Director had properly established, by a preponderance of the medical evidence of record, that at the time of his death, Roscoe Porter had not suffered from pneumoconiosis.[2] The Board affirmed the ALJ's determination that Ruby Porter was ineligible for widow's benefits under the Act, concluding that there was substantial evidence within the administrative record to support the ALJ's conclusion that the Director had properly demonstrated that, at the time of his demise, Roscoe Porter was not suffering from pneumoconiosis.
 
 
 3
 Ruby Porter thereafter timely filed her pro se petition with this court, seeking review of the Board's final decision pursuant to section 422(a) of the Act. See 30 U.S.C. Sec. 932(a) (incorporating by reference section 21(c) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. Sec. 932(a)).
 
 
 4
 It is well established that the standard imposed upon an appellate court, when considering a petition requesting review of the final decision of the Board, is "limited to 'scrutiniz[ing] Board decisions for errors of law and for adherence to the statutory standard governing the Board's review of the administrative law judge's factual determinations.' " Gibas v. Saginaw Mining Co., 748 F.2d 1112, 1116 (6th Cir.1984) (quoting Director, Office of Workers' Compensation Programs v. Rowe, 710 F.2d 251, 254 (6th Cir.1983) (quoting Bumble Bee Seafoods v. Director, Office of Workers' Compensation Programs, 629 F.2d 1327, 1329 (9th Cir.1980))), cert. denied, 471 U.S. 1116, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985); Adams v. Peabody Coal Co., 816 F.2d 1116, 1120 (6th Cir.1987) (per curiam); accord Wardman v. Pittsburg & Midway Coal Mining Co., 839 F.2d 257, 258 (6th Cir.1988). In the case at bar, Ruby Porter has challenged the ALJ's factual conclusion, affirmed by the Board upon its review, that the medical evidence of record had "establishe[d] that [Roscoe Porter] ... did not have[ ] pneumoconiosis." 20 C.F.R. Sec. 727.203(b)(4).
 
 
 5
 This court is required to "affirm the ALJ's factual determination if ... supported by substantial evidence." Tennessee Consolidated Coal Co. v. Crisp, 866 F.2d 179, 184 (6th Cir.1989); see also Youghiogheny & Ohio Co. v. Milliken, 866 F.2d 195, 202 (6th Cir.1989); York v. Benefits Review Bd., 819 F.2d 134, 136 (6th Cir.1987). "Substantial evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion.' " Youghiogheny & Ohio Coal Co., 866 F.2d at 202 (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); Crisp, 866 F.2d at 184. In reviewing the ALJ's factual determinations, a reviewing court is not, however, permitted to reweigh the evidence, even where it might have reached a different result based upon the same evidence, but rather is limited to inquiring as to whether there is evidence of record to support the findings which were in fact reached. See, e.g., Creech v. Benefits Review Rd., 841 F.2d 706, 708-09 (6th Cir.1988); Moseley v. Peabody Coal Co., 769 F.2d 357, 360 (6th Cir.1985).
 
 
 6
 The ALJ noted that the chest x-rays of record, spanning a period from August 8, 1974 through April 11, 1975, were subject to conflicting readings as to the presence of pneumoconiosis, and that, additionally, a ventilatory study performed on March 1, 1974 was inconclusive.
 
 
 7
 An autopsy was performed upon the decedent on July 9, 1975 by Dr. Andjus, who concluded that Roscoe Porter has died from a combination of factors, including generalized arteriosclerosis, severe; arteriosclerosis of coronary arteries; myocardial infarction of an old nature; hypoplasia of the right coronary artery; emphysema of the lungs, slight; pulmonary congestion and edema; and pleural effusion, bilateral, slight. Although Dr. Andjus performed a microscopic examination of the lungs, and noted the presence of a slight emphysatic condition, he did not express any conclusion as to the presence of pneumoconiosis.[3]
 
 
 8
 Dr. Rohdes, who had been one of Roscoe Porter's examining physicians from June, 1973 until July, 1975, and who had reviewed the autopsy report, indicated in a medical report dated February 11, 1976 that he had observed no evidence to suggest that the decedent had suffered from pneumoconiosis or other chronic lung disability. Dr. Rohdes indicated that he had treated the deceased during his lifetime for acute myocardial infarction and coronary insufficiency, and opined that Roscoe Porter had died from an acute myocardial infarction. In addition, Dr. Mak, who had also served on occasion as one of Roscoe Porter's examining physicians, stated in a letter dated August 18, 1976 that based upon his personal observations and treatment of the decedent, as well as his examination of the autopsy report, that there had been no definitive diagnosis of pneumoconiosis. Dr. Mak concluded that Roscoe Porter's death was the result of an acute myocardial infarction.
 
 
 9
 The ALJ ultimately concluded that the autopsy report of Dr. Andjus, when considered in conjunction with the medical opinions of Dr. Rohdes and Dr. Mak, both of whom had served for several years as the decedent's examining physician, was entitled to greater weight than the conflicting readings of the x-ray examinations. Upon review of Porter's petition for review, the record in its entirety, and the briefs of the parties, this court concludes that the Board's denial of black lung disability benefits to Ruby Porter, based upon the ALJ's conclusion that the preponderance of the medical evidence of record demonstrated that Roscoe Porter did not have pneumoconiosis at the time of his death, was supported by substantial evidence. See, e.g., Warman, 839 F.2d at 261-62 (ALJ's determination of rebuttal under section 727.203(b)(4) upheld upon appellate review, based upon the evaluation provided by testifying physician that the clinical, diagnostic and x-ray evidence did not support the conclusion that the claimant had suffered from pneumoconiosis) (citing Orange v. Island Creek Coal Co., 786 F.2d 724 (6th Cir.1986)); accord Crisp, 866 F.2d at 185 (The ALJ should generally "accept a 'documented opinion of a physician exercising reasoned medical judgment.' ") (quoting Moseley, 769 F.2d at 261). Accordingly, the denial of benefits is AFFIRMED for the reasons stated by the Benefits Review Board in its decision of March 29, 1988.
 
 
 
 [1]
 Section 727.203(a)(1) provides as follows:
 (a) Establishing interim presumption. A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis at the time of death, or death will be presumed to be due to pneumoconiosis, arising out of that employment, if one of the following medical requirements is met:
 (1) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis (see Sec. 410.428 of this title)....
 
 
 [20]
 C.F.R. Sec. 727.203(a)(1)
 
 
 [2]
 Section 727.203(b)(4) states as follows:
 (b) Rebuttal of interim presumption. In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption in paragraph (a) of this section shall be rebutted if:
 * * *
 (4) The evidence establishes that the miner does not, or did not, have pneumoconiosis.
 
 
 [20]
 C.F.R. Sec. 727.203(b)(4)
 
 
 [3]
 This court specifically rejects any suggestion on the part of the Director that Dr. Andjus's failure to have positively and affirmatively indicated the presence of pneumoconiosis in his autopsy report is necessarily dispositive as to whether Roscoe Porter suffered from that condition. Although an autopsy report which expressly indicates the presence of pneumoconiosis would, of course, provide "reliable evidence of the existence of pneumoconiosis," McLaughlin v. Jones & McLaughlin Steel Corp., 2 BLR 1-103 (1979) (emphasis added); accord Kinnick v. National Mines Corp., 2 BLR 1-221 (1979), an autopsy which is silent as to the existence of pneumoconiosis need not be accorded the same weight by the ALJ, merely on the basis of an implied negative. To the contrary, the ALJ is instructed by the applicable regulations to consider "all relevant medical evidence." 20 C.F.R. Sec. 727.203(b)
 The absence of any reference to pneumoconiosis in the autopsy report might well depend upon whether the particular pathologist performing the postmorten had, in fact, examined the individual for the presence of this condition. Absent specific indication by the pathologist performing the autopsy, either in the autopsy report itself, see, e.g., Terlip v. Director, Office of Workers' Compensation Programs, BRB 83-1389 (1985), or alternatively in the form of oral testimony before the ALJ by the performing pathologist, see, e.g., Fetterman v. Director, Office of Workers' Compensation Programs, 7 BLR 1-103 (1979), demonstrating that the autopsy had included an examination for the presence of pneumoconiosis, the mere fact that the autopsy report does not explicitly indicate that the decedent had suffered from pneumoconiosis at the time of his death need not be accorded dispositive status by the ALJ, the Board or this court.