892 F.2d 1044
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
PEABODY COAL COMPANY and Old Republic Insurance Company, Petitioners,
v.
Margaret HAWKINS, widow of James Hawkins, Jr., and Director,
Office of Workers' Compensation Programs, United
States Department of Labor, Respondents.
 No. 89-3336.
 United States Court of Appeals, Sixth Circuit.
 Jan. 2, 1990.
 
 Before MILBURN and RALPH B. GUY, Jr., Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Petitioner Peabody Coal Company appeals from an order of the Benefits Review Board (Board) affirming the decision of an administrative law judge (ALJ) in which the claimant, Margaret Hawkins, and two illegitimate children of the deceased, James M. Tapp and Stacie E. Tapp, were awarded survivors' benefits under the Black Lung Benefits Act, 30 U.S.C. § 901, et seq. The petitioner asserts that the ALJ's refusal to find rebuttal of the black lung interim presumption under 20 C.F.R. § 727.203(b)(1), (2), or (3), was arbitrary, capricious, and unsupported by any reasonable reading of the record. Finding that the ALJ's decision is supported by substantial evidence, we affirm.
 
 I.
 
 2
 James Hawkins died on February 2, 1974, after having worked as a coal miner for about seventeen years. He went to work for Peabody Coal Company, the responsible operator in this case, in February 1971, and he worked as a coal miner for Peabody until a few weeks before his death.
 
 
 3
 On January 17, 1974, Hawkins slipped at work and broke his leg.[1] After being treated and released from the hospital, he continued to suffer pain and discomfort, so he was hospitalized on January 29, 1974. On February 2, 1974, Hawkins died suddenly when a blood clot in his leg entered his bloodstream and caused a massive pulmonary thrombo-embolism. Dr. E. Kawas performed an autopsy which confirmed the cause of death, but which also diagnosed pneumoconiosis. His examination of Hawkins' lungs revealed "scattered anthracotic pigmentation," and the cut section of his lymph nodes presented "a soft anthracotic parenchyma." (App. 24). Upon microscopic examination of the lung, Dr. Kawas reported "a moderately severe degree of anthracosis," and he found that the lymph nodes were affected by "diffuse anthracosis." (App. 26). Dr. Kawas did not, however, specifically indicate that the anthracosis was coal miner's pneumoconiosis, nor did he opine about the effect that the disease would have had on Hawkins' functional capacities.
 
 
 4
 The claimant, Mrs. Hawkins, filed her original claim for benefits under the Black Lung Benefits Act on May 3, 1974. On October 26, 1976, Dorothy Tapp filed an independent claim for benefits on behalf of her children, who were the illegitimate children of the deceased miner.[2] The Department of Labor denied Mrs. Hawkins' claim on July 6, 1976.
 
 
 5
 On September 16, 1980, the Department of Labor reported that it had reviewed the original claim under the Black Lung Benefits Reform Act of 1977 and that it now believed that benefits were payable to the widow.[3] This date was also the first time that Peabody Coal Company was notified of the existence of the claim.
 
 
 6
 Trial on the claim was held before an ALJ on November 30, 1983, and on March 23, 1984, the ALJ issued a decision and order awarding benefits to Mrs. Hawkins and to the Tapp children. Peabody filed an appeal to the Benefits Review Board, and the Board affirmed the ALJ's decision on August 26, 1988, holding that the decision was supported by substantial evidence. The Benefits Review Board subsequently denied a request by Peabody for reconsideration. This appeal followed.
 
 II.
 
 7
 Because the autopsy report concluded that pneumoconiosis was present in Hawkins' lungs, his widow's claim is entitled to the benefit of the "interim presumption" of 20 C.F.R. § 727.203(a)(1). This section of the regulations reads:
 
 
 8
 (a) Establishing interim presumption. A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, or to have been totally disabled due to pneumoconiosis at the time of death, or death will be presumed to be due to pneumoconiosis, arising out of that employment, if one of the following medical requirements is met:
 
 
 9
 (1) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis (see § 410.428 of this title)....
 
 
 10
 20 C.F.R. § 727.203(a)(1) (1989). This presumption has the effect of entitling the claimant to benefits unless Peabody can rebut the presumption under one or more of the provisions of 20 C.F.R. § 727.203(b).[4] Peabody does not argue in this appeal that Hawkins was not employed as a coal miner for at least ten years, nor does it dispute that the autopsy established the existence of pneumoconiosis. Rather, Peabody argues that the ALJ erred in concluding that the interim presumption was not rebutted.
 
 
 11
 Our scope of review in this case is quite limited. We may not engage in a de novo review of the evidence, and we may not second guess the credibility findings of the ALJ. We must affirm the decision of the ALJ if it is supported by substantial evidence and in accordance with applicable law. Kolesar v. Youghiogheny & Ohio Coal Co., 760 F.2d 728, 729 (6th Cir.1985). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted). Once the interim presumption has been invoked, the claimant is entitled to an award of benefits unless the employer successfully carries its burden of persuasion to rebut the presumption. Mullins Coal Co. v. Director, Office of Workers' Compensation Programs, 484 U.S. 135, 146 (1987).
 
 A.
 
 12
 To establish rebuttal under 20 C.F.R. § 727.203(b)(1), Peabody must prove that Hawkins was engaged in his usual coal mine employment up to the time of his death. This inquiry consists primarily of an evaluation of lay evidence of the circumstances surrounding the miner's employment at the time of his death. The presumption cannot be rebutted merely by showing that "the miner continued to work in a coal mine at the time of his death." Farmer v. Rodgers, 839 F.2d 269, 272 (6th Cir.1988). A miner could continue to work in a coal mine up to his death despite the fact that he was disabled. Evidence of this disability might consist, inter alia, of evidence that his productivity declined or that he was ill while on the job. In addition, the widow of a deceased miner does not bear the burden of establishing that circumstances of the miner's employment changed before his death. Id. at 274. Rather, the employer affirmatively must prove that circumstances did not change and that the miner's employment was unaffected by disability due to pneumoconiosis.
 
 
 13
 20 C.F.R. § 727.205 addresses the problem of current coal mine employment in some detail. This section provides that, in the case of a miner who was working in a coal mine at the time of death, "all relevant evidence, including the circumstances of such employment and the statements of the miner's spouse, shall be considered in determining whether the miner was totally disabled due to pneumoconiosis at the time of death." 20 C.F.R. § 727.205 (1989). In this case, the claimant testified at the hearing before the ALJ that her husband had been suffering symptoms of pneumoconiosis since the 1950s, when he first went to work in a coal mine. She testified that he would have coughing spells and that he would cough up and vomit black phlegm. He also would experience shortness of breath. She testified that these problems became worse as the years passed, and she explained that Hawkins "used to have a man that worked with him, his name was Thomas Johnson, and he said he would help him a lot when he would get those coughing spells." (App. 105-06). Hawkins saw a number of doctors over the years for his lung problems, but he would go to work even when he was sick. There is no medical evidence in the record to support her testimony, but the ALJ nonetheless concluded that the claimant was credible.
 
 
 14
 Peabody presented no affirmative evidence to contradict Mrs. Hawkins' testimony. The coal company attempts to persuade this court that the absence of statements by Hawkins' co-workers that he needed assistance while at work should weigh in favor of rebuttal. But this argument would alter the burden of persuasion in the rebuttal phase of this case. Instead of arguing that the claimant has failed to buttress her testimony with the testimony of Hawkins' co-workers, Peabody was required to present its own evidence to contradict her testimony.
 
 
 15
 Peabody also places emphasis on the report of Dr. Ainsworth which made no mention of any black lung problems. Peabody argues that if Hawkins indeed were suffering from the symptoms of black lung disease while in the hospital, then these symptoms should be noted in the hospital records. While this argument has some merit, such silence in Dr. Ainsworth's report, standing alone, is not sufficient to prove that Hawkins was not suffering from pneumoconiosis while in the hospital. This inference does not suffice to meet Peabody's burden of persuasion that Hawkins was performing his "usual coal mine employment" at the time of his death. The ALJ found the claimant's testimony to be credible, and the conclusion that rebuttal under section 727.203(b)(1) had not been established was reasonable.
 
 B.
 
 16
 Unlike the inquiry under section 727.203(b)(1), rebuttal under (b)(2) or (b)(3) is strictly a medical inquiry. Ramey v. Kentland Elkhorn Coal Co., 755 F.2d 485, 490 (6th Cir.1985) ((b)(2) rebuttal is determined on the basis of medical proof); Tennessee Consol. Coal Co. v. Crisp, 866 F.2d 179, 187 (6th Cir.1989) ((b)(3) rebuttal is determined on the basis of a " 'documented opinion of a physician exercising reasonable judgment' "). To rebut the interim presumption under (b)(2), Peabody must come forward with medical evidence that proves that Hawkins was able to perform his usual coal mine employment.[5] To be successful at rebutting the presumption based upon (b)(3), Peabody must present evidence that the "total disability or death of the miner did not arise in whole or in part out of coal mine employment." 20 U.S.C. § 727.203(b)(3) (1989). Under (b)(2), the issue is whether the miner was disabled; under (b)(3), by contrast, the issue is whether pneumoconiosis caused the disability. In this case, there is no dispute that Hawkins' death was not caused by pneumoconiosis. Rather, Peabody argues that Hawkins was not disabled due to pneumoconiosis at the time of his death. The medical evidence contained in the record consists of Dr. Ainsworth's report; the autopsy report; and the opinions of Dr. Gallo, a pulmonary specialist, and of Dr. Pitzer, a pathologist. Dr. Gallo and Dr. Pitzer formulated their opinions based upon an examination of the microscopic slides of Hawkins' lungs that Dr. Kawas prepared in the course of the autopsy. Neither physician testified at the hearing before the ALJ. Evidence of their opinions was presented in the form of depositions and reports. Dr. Gallo concluded that the pneumoconiosis found in Hawkins' lungs was early and simple, and that it would have had no effect on his functional capacities. In his pathology report, Dr. Pitzer diagnosed moderate, bilateral pneumoconiosis. In his deposition, he opined that the disease probably would have had no clinical effects. Peabody argues that these reports, coupled with the silence in Dr. Ainsworth's report with respect to black lung disease, constitute sufficient evidence to rebut the interim presumption. Peabody further argues that the ALJ's dismissal of this evidence was improper.
 
 
 17
 Citing Zimmerman v. Director, Office of Workers' Compensation Programs, 871 F.2d 564 (6th Cir.1989), Peabody argues that the Benefits Review Board exceeded its authority and "filled in the gaps" in the ALJ's fact finding. Peabody contends that the ALJ did not address (b)(2) rebuttal adequately in her opinion, and that the Board exceeded its authority in finding that (b)(2) rebuttal had not been proved. We conclude that the Board did not exceed its authority; rather, the Board found that the ALJ rejected the reports of Dr. Gallo and Dr. Pitzer, and that she found the autopsy report to be credible. Thus, the Board's conclusions were well within their scope of review, which is whether the ALJ's decision was supported by substantial evidence.
 
 
 18
 All three physicians examined the same microscopic slides of lung tissue, and all three reached somewhat different conclusions. Where there is conflict or dispute among medical evidence, " '[d]eterminations of whether a physician's report is sufficiently documented and reasoned is a credibility matter left to the trier of fact.' " Tennessee Consol. Coal Co. v. Crisp, 866 F.2d 179, 185 (6th Cir.1989) (quoting Moseley v. Peabody Coal Co., 769 F.2d 357, 360 (6th Cir.1985)). In this case, therefore, it was the province of the ALJ to evaluate the conflicting medical reports and to make a finding of fact on the issue of rebuttal under sections 727.203(b)(2) or (b)(3). The ALJ considered the autopsy report to be more persuasive and credible than the opinions of Dr. Gallo and Dr. Pitzer. Of most significance, she was impressed by the fact that Dr. Kawas had the opportunity to examine Hawkins' lungs in their entirety, whereas the other physicians were limited to an examination of the slides. We agree that this distinction weighs in favor of the credibility of Dr. Kawas' opinion, notwithstanding the fact that Dr. Kawas made his diagnosis primarily upon the slides, since all he could observe from his examination of the lungs was pigmentation. Another reason the ALJ gave for discrediting the opinions of Dr. Gallo and Dr. Pitzer was that they did not have the opportunity to interview Hawkins to determine whether he suffered the symptoms of pneumoconiosis. The claimant, on the other hand, lived with the deceased and observed his health daily, and she testified that he suffered the symptoms of black lung disease. We conclude that the ALJ's decision that the interim presumption was not rebutted is supported by substantial evidence. Dr. Gallo's and Dr. Pitzer's opinions are not conclusive on the issue of disability due to pneumoconiosis, even though neither the treating physician nor the doctor who performed the autopsy rendered any opinion on disability. Weighing the various reports was still the province of the ALJ. The autopsy report was sufficient to invoke the interim presumption that Hawkins was disabled by pneumoconiosis. Because these three medical reports constitute the entire basis upon which Peabody attempts to rebut the interim presumption under (b)(2) and (b)(3), and because the ALJ's resolution of the conflicting evidence was reasonable, we find that Peabody has failed to meet its burden of persuasion.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 There is some dispute about how Hawkins broke his leg. The claimant testified that Hawkins broke his leg when he slipped and fell after becoming short of breath while trying to run to catch a mantrip to take him out of the mine. Peabody points out that the hospital report by Dr. Ainsworth, who treated Hawkins for his broken leg, recounts a different story. According to this report, Hawkins slipped on a slick surface and fell while stepping off the mantrip. Peabody argues that the report is more accurate because it presumably reports the facts as told by Hawkins to Dr. Ainsworth. However, the report does not necessarily report the words of Hawkins more accurately than does the claimant's testimony. A resolution of this conflicting evidence is a matter for the administrative law judge, who makes credibility determinations. Finding the claimant to be credible, the ALJ concluded that Hawkins broke his leg while running to catch the mantrip. We decline to set aside the ALJ's finding of fact with respect to how Hawkins broke his leg, concluding that this finding is supported by substantial evidence
 
 
 [2]
 Although 30 U.S.C. § 922 provides that there may be only one primary beneficiary under the Act, who in this case is the deceased miner's widow, benefits may also be paid to dependent surviving children of the miner. 30 U.S.C. § 922(a)(3)
 
 
 [3]
 Ms. Tapp's claim was denied at this time, but the Department reversed its decision on July 30, 1981, and considered the Tapp children to be eligible for benefits. Although Peabody challenged the eligibility of the Tapp children in prior proceedings in this case, this issue is not raised in this appeal
 
 
 [4]
 This section reads:
 (b) Rebuttal of interim presumption. In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption in paragraph (a) of this section shall be rebutted if:
 (1) The evidence establishes that the individual is, in fact, doing his usual coal mine work or comparable and gainful work (see § 410.412(a)(1) of this title); or
 (2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work (see § 410.412(a)(1) of this title); or
 (3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment; or
 (4) The evidence establishes that the miner does not, or did not, have pneumoconiosis.
 
 
 [5]
 Inquiry under the first prong of (b)(2), whether the miner was able to perform his usual coal mine employment, is limited to an evaluation of medical evidence. When the employer seeks to prove that the miner is able to perform "comparable and gainful work," vocational factors also should be considered. Adams v. Peabody Coal Co., 816 F.2d 1116, 1118 (6th Cir.1987). As Hawkins worked as a coal miner until shortly before his death, whether he was able to perform comparable and gainful work is irrelevant