*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0348p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

BIG BRANCH RESOURCES, INCORPORATED, as insured by The West Virginia CWP Fund,
                                            *Petitioner*,

                    *v.*

JOHN A. OGLE; DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
                                            *Respondents*.

No. 13-3251

Upon Petition for Review of an Order
of the Benefits Review Board.
No. 12-0194 BLA.

Decided and Filed: December 17, 2013

Before: BATCHELDER, Chief Judge; GUY and MOORE, Circuit Judges.

_____

## COUNSEL

_____

**ON BRIEF:** William S. Mattingly, Jeffrey R. Soukup, JACKSON & KELLY PLLC, Morgantown, West Virginia, for Petitioner. Joseph E. Wolfe, Ryan C. Gilligan, WOLFE, WILLIAMS, RUTHERFORD & REYNOLDS, Norton, Virginia for Respondent Ogle. Sean G. Bajkowski, Maia S. Fisher, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondent.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge. In this case, the Benefits Review Board ("the Board") affirmed the decision of the administrative law judge ("ALJ") granting John A. Ogle's claim for federal black lung benefits. The West Virginia Coal Workers' Pneumoconiosis Fund ("the Fund") as insurer of the defunct Big Branch Resources, Inc. petitions for review of that decision, claiming that the ALJ erred on several grounds. In particular, the Fund argues that the ALJ improperly restricted the

Fund's ability to rebut the fifteen-year presumption and that the ALJ applied the wrong standard for rebutting the causation presumption. The Fund further alleges that the ALJ's conclusion that the Fund did not rebut the fifteen-year presumption was erroneous. Finally, the Fund posits that the ALJ wrongly discredited the medical opinions of two experts. Because there is no evidence that the ALJ improperly restricted the Fund's ability to rebut the fifteen-year presumption or that the ALJ applied the wrong standard, and because the ALJ's other decisions are supported by substantial evidence, we **DENY** the petition for review.

## I.  BACKGROUND

Ogle, born in 1954, worked in various jobs in underground coal mines for twenty-one years. Jt. App'x at 269–70 (ALJ Dec. at 5–6). His last coal mine employment was in 1996 in Kentucky. Jt. App'x at 269 (ALJ Dec. at 5). Ogle has been a long-term smoker, beginning at the age of twelve. Jt. App'x at 270 (ALJ Dec. at 6). He submitted this claim for benefits on November 5, 2007. Jt. App'x at 266 (ALJ Dec. at 2). On May 5, 2009, an ALJ[1] conducted a formal hearing at which the parties also submitted exhibits. Jt. App'x at 266, 267–68 (ALJ Dec. at 2, 3–4).

After the record closed but before the ALJ issued a decision, Congress enacted legislation reviving a rebuttable statutory presumption that a coal miner who worked in an underground coal mine for at least fifteen years and suffers from a total respiratory or pulmonary disability is presumed to be totally disabled due to pneumoconiosis. *See* Patient Protection and Affordable Care Act ("PPACA"), Pub. L. No. 111-148, § 1556, 124 Stat. 119 (2010); *see also* 30 U.S.C. § 921(c)(4). The presumption applied retroactively to claims filed after January 1, 2005, and pending at the time the PPACA was enacted. PPACA, Pub. L. No. 111-148, § 1556(c).

Because Ogle's claim fit the timing criteria for the statutory presumption, the ALJ solicited additional evidence related to the new law and position statements

---

[1]ALJ Miller conducted the hearing at the Bristol Public Library in Bristol, Virginia. ALJ Miller retired before reaching a decision in this case. ALJ Colwell took over the case and issued a decision. The parties did not object to the change.

regarding the applicability of the rebuttable presumption to this claim. Jt. App'x at 267 (ALJ Dec. at 3). The Fund submitted supplemental medical reports and a position statement. *Id.*

On December 8, 2011, the ALJ issued his Decision and Order Awarding Benefits ("ALJ Dec."). Jt. App'x at 265–99. In the decision, the ALJ first determined that Ogle filed the claim after January 1, 2005, and the claim was pending at the time the rebuttable presumption provision was enacted. Jt. App'x at 267 (ALJ Dec. at 3). The ALJ then found that Ogle suffered from a totally disabling respiratory impairment, a finding with which all medical opinions submitted agreed. Jt. App'x at 289 (ALJ Dec. at 25). Based on this finding of total disability, the filing of the claim after January 1, 2005, and the agreement that the miner had over fifteen years of underground coal mine employment, the ALJ found that the fifteen-year, rebuttable presumption under 30 U.S.C. § 921(c)(4) and 20 C.F.R. § 718.305 applied. Jt. App'x at 289 (ALJ Dec. at 25).

Next, the ALJ noted that the rebuttable presumption shifts the burden to the Fund "to demonstrate by a preponderance of the evidence either: (1) the miner's disability does not, or did not, arise out of coal mine employment; or (2) the miner does not, or did not, suffer from pneumoconiosis." Jt. App'x at 290 (ALJ Dec. at 26). After reviewing medical opinions regarding x-ray evidence, the ALJ concluded that the Fund did demonstrate by a preponderance of the evidence that Ogle did not suffer from clinical pneumoconiosis. Jt. App'x at 291–93 (ALJ Dec. at 27–29). However, the Fund failed to rebut the presumption that Ogle suffers from legal pneumoconiosis. Jt. App'x at 296 (ALJ Dec. at 32).

The ALJ noted that the medical opinions of Dr. Forehand, Dr. Baker, and Dr. Agarwal all concluded that Ogle's impairment is due to heavy smoking as well as exposure to coal dust, while the opinions of Dr. Jarboe and Dr. Castle attribute the impairment to smoking alone. Jt. App'x at 293 (ALJ Dec. at 29). The ALJ discredited the opinions of Dr. Jarboe and Dr. Castle because they failed to "adequately address the qualifying $FEV_1$ values on the miner's pre- and post- bronchodilator testing documenting

the presence of obstructive lung disease."**2**  Jt. App'x at 295 (ALJ Dec. at 31).  Apart from their failure to "adequately explain the cause of the *irreversible* and *totally* disabling component of the miner's lung disease," *id.*, these two physicians' opinions "lose probative value" because they "rely on negative chest x-ray findings to preclude a finding of legal pneumoconiosis," *id.*, which contradicts Department of Labor determinations.  The other three doctors diagnosed legal pneumoconiosis.  Jt. App'x at 296 (ALJ Dec. at 32).  Their opinions were not based on views "inconsistent" with the Department of Labor's position.  *Id.*  Therefore, the ALJ found that the Fund had not rebutted the presumption of legal pneumoconiosis.  *Id.*

In determining whether the Fund had rebutted the causation presumption, the ALJ, after stating the rule-out standard,**3** discussed why he credited some medical opinions and discredited others.  Jt. App'x at 296–97 (ALJ Dec. at 32–33).  He gave less weight to the disability causation opinions of Dr. Jarboe and Dr. Castle because they had not diagnosed legal pneumoconiosis.  Jt. App'x at 297 (ALJ Dec. at 33).  Based on the opinions of Dr. Baker, Dr. Forehand, and Dr. Agarwal, whose opinions the ALJ found to be "sufficiently reasoned and documented," Jt. App'x at 297 (ALJ Dec. at 33), the ALJ concluded that Ogle's total disability stems from both smoking and coal dust exposure.  *Id.*  Having determined that the Fund failed to rebut the causation presumption as well, the ALJ awarded benefits.  *Id.*

The Fund appealed the award of benefits to the Board which affirmed the ALJ's decision as legally sound and based on substantial evidence.  Jt. App'x at 307 ( Benefits Review Board Decision and Order ("Bd. Dec.") at 8).  In its opinion, the Board first reviewed the ALJ's findings and the assertions of error made by the Fund.  *See* Jt. App'x at 301–05 (Bd. Dec. at 2–6).  The Board analyzed the ALJ's findings under the same substantial evidence standard that we use.  Jt. App'x at 302 (Bd. Dec. at 3) (noting that

---

**2**FEV$_1$ (forced expiratory volume in one second) is a measure of lung function.  The test results are a percentage of predicted values based on characteristics such as the subject's age, height, weight, and gender.  *See Peabody Coal Co. v. Lowis*, 708 F.2d 266, 270 (7th Cir. 1983).

**3**This standard is consistently applied for rebutting disability causation by the Fourth Circuit. *See, e.g.*, *Stiltner v. Island Creek Coal Co.*, 86 F.3d 337, 339 (4th Cir. 1996).

the Board must affirm the ALJ's opinion "if it is rational, supported by substantial evidence, and in accordance with applicable law"). The Board rejected the Fund's arguments that the ALJ "failed to provide valid reasons for discounting the opinions of Drs. Jarboe and Castle." Jt. App'x at 305 (Bd. Dec. at 6). The Board affirmed the ALJ's weighing of the evidence and noted that "whether a medical opinion is sufficiently documented and reasoned is a credibility matter within the purview of the [ALJ]." Jt. App'x at 306 (Bd. Dec. at 7). As a result, the Board affirmed the ALJ's finding that the Fund failed to prove that Ogle did not suffer from legal pneumoconiosis. *Id.* Turning to disability causation, the Board found that the ALJ "accurately noted that all of the physicians agree that [Ogle]'s disability is due to his pulmonary impairment," Jt. App'x at 307 (Bd. Dec. at 7), thus leaving only the question whether Ogle's impairment is due to his coal mine employment. The Board agreed with the ALJ that the physicians' opinions on this question were closely related to their opinions on the existence of legal pneumoconiosis, and the Board approved of the ALJ discounting the opinions of Dr. Jarboe and Dr. Castle for the same reasons. *Id.* Consequently, the Board affirmed the ALJ's conclusion that the Fund had failed to disprove disability causation, that the Fund had not rebutted the presumption, and that benefits ought be awarded. *Id.*

This petition for review followed.

## II.  ANALYSIS

### A.  Standard of Review

In reviewing an appeal from the Board, we review the Board's legal conclusions de novo. *Paducah Marine Ways v. Thompson*, 82 F.3d 130, 133 (6th Cir. 1996). While we will not vacate the Board's decision unless the Board has committed legal error or exceeded its scope of review, *Jonida Trucking, Inc. v. Hunt*, 124 F.3d 739, 742 (6th Cir. 1997), we review the ALJ's decision to determine whether the ALJ applied the applicable law correctly to reach a conclusion supported by substantial evidence. *Tenn. Consol. Coal Co. v. Kirk*, 264 F.3d 602, 606 (6th Cir. 2001). "'Substantial evidence' means 'such relevant evidence as a reasonable mind might accept as adequate to support

a conclusion.'" *Kolesar v. Youghiogheny & Ohio Coal Co.*, 760 F.2d 728, 729 (6th Cir. 1985) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "We do not reweigh the evidence or substitute our judgment for that of the ALJ." *Kirk*, 264 F.3d at 606. Therefore, we may affirm an ALJ's decision even though "we would have taken a different view of the evidence were we the trier of facts." *Ramey v. Kentland Elkhorn Coal Corp.*, 755 F.2d 485, 486 (6th Cir. 1985).

If the ALJ has adequately explained why he weighed the evidence as he did, then he has satisfied the substantial evidence standard. *Morrison v. Tenn. Consol. Coal Co.*, 644 F.3d 473, 478 (6th Cir. 2011). "A remand or reversal is only appropriate when the ALJ fails to consider all of the evidence under the proper legal standard or there is insufficient evidence to support the ALJ's finding." *McCain v. Director, Office of Workers Compensation Programs*, 58 F. App'x 184, 201 (6th Cir. 2003).

## B.  Legal Structure

The Black Lung Benefits Act ("BLBA") provides benefits to coal miners who have become totally disabled due to their exposure to coal dust and resulting pneumoconiosis. *See* 30 U.S.C. § 901(a). Under the BLBA, an individual is entitled to benefits if he is (1) a coal miner (2) who suffers from pneumoconiosis (3) arising out of his coal mine employment and (4) causing (5) his total disability. *See* 20 C.F.R. § 725.202(d); *see also Buck Creek Coal Co. v. Sexton*, 706 F.3d 756, 758 (6th Cir. 2013). In 2010, Congress reinstated a fifteen-year rebuttable presumption by striking the last sentence of § 411(c)(4) of the BLBA, 30 U.S.C. § 921(c)(4). *See* PPACA, Pub. L. No. 111-148, § 1556(a). Under the presumption, "if a miner was employed for fifteen years or more in one or more underground coal mines" and "demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis." 30 U.S.C. § 921(c)(4).

Thus, after a showing that the miner (1) was employed for at least fifteen years in underground coal mines and (2) is totally disabled due to a respiratory or pulmonary impairment, then the rest of the elements outlined in 20 C.F.R. § 725.202(d) are

presumed and the burden shifts to the employer to rebut them. Proof sufficient to invoke the presumption proves the first element—that the individual is a coal miner—and the fifth element—that the individual is totally disabled. The other three elements—that the individual suffers from pneumoconiosis arising out of his coal mine employment and causing this disability—are presumed. According to the statute, "[t]he Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine." 30 U.S.C. § 921(c)(4).

The Fund claims that the ALJ and the Board improperly restricted its ability to rebut the fifteen-year presumption by limiting the Fund to only the two methods through which the Secretary may rebut the presumption. The Fund points to *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1 (1976), to argue that the final sentence of 30 U.S.C. § 921(c)(4) does not restrict private operators.

A prior panel of this court has held that to rebut the presumption, the employer "must establish that: "(A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine." *Morrison*, 644 F.3d at 479 (quoting 30 U.S.C. § 921(c)(4)). The ALJ here stated that the rebuttable presumption shifts the burden to the Fund "to demonstrate by a preponderance of the evidence either: (1) the miner's disability does not, or did not, arise out of coal mine employment; or (2) the miner does not, or did not, suffer from pneumoconiosis." Jt. App'x at 290 (ALJ Dec. at 26). Therefore, ALJ properly followed published Sixth Circuit precedent in stating the methods available for rebuttal.

The two rebuttal methods were properly identified and analyzed by the ALJ. The ALJ stated that the Fund can show that the miner does not suffer from pneumoconiosis. *Id.* Such a showing rebuts the first of the three "presumed" elements—that the individual suffers from pneumoconiosis arising out of his coal mine employment and causing his disability. The ALJ concluded that the Fund failed to show that the miner did not suffer from pneumoconiosis. Jt. App'x at 296 (ALJ Dec. at 32).

The ALJ then explained why the Fund did not rebut what the ALJ labels "disability causation." Jt. App'x at 296–97 (ALJ Dec. at 32–33). Disability causation rebuttal, according to the ALJ, can be accomplished by proving that the miner's disability does not arise out of coal mine employment. Jt. App'x at 296 (ALJ Dec. at 32). This formulation encompasses both of the remaining causation elements. The Fund could have proven that the miner's disability does not arise out of coal mine employment by showing either that the miner's pneumoconiosis does not arise out of his coal mine employment or that his pneumoconiosis does not cause his disability. The ALJ did not err by collapsing the two-step causal chain—that coal mine employment caused pneumoconiosis which in turn caused total disability—into a single question: did the miner's disability arise out of his coal mine employment?

Furthermore, proving that there is no causal link between a miner's coal mine employment and his pneumoconiosis would have shown that the miner does not suffer legal pneumoconiosis. After all, "'legal pneumoconiosis' includes any chronic lung disease or impairment and its sequelae arising out of coal mine employment." 20 C.F.R. § 718.201(a)(2). To conclude that Ogle suffered from legal pneumoconiosis, the ALJ determined that Ogle's chronic lung disease or impairment did arise out of his coal mine employment. Thus, the Fund had failed to disprove the first link in the causal chain.

The Fund mistakenly argues that there is a third rebuttal method which was denied to the Fund; specifically, the Fund posits that it ought be able to contend that a miner's pneumoconiosis is mild and that the totally disabling respiratory impairment is the product of another disease. This argument, however, is not a unique third rebuttal method, but merely a specific way to attack the second link in the causal chain—that pneumoconiosis caused total disability. Nothing in the record suggests that the Fund was prevented from making this argument.

The Fund also argues that the ALJ applied the incorrect standard for rebutting disability causation. The ALJ applied the Fourth Circuit's "rule-out" standard. *See Bethlehem Mines Corp. v. Massey*, 736 F.2d 120, 123 (4th Cir. 1984) (holding that "the employer must *rule out* the causal relationship between the miner's total disability and

his coal mine employment in order to rebut the interim presumption").[4] Instead, the Fund argues that the proper standard is a "contributing cause" standard that allows the Fund to rely on a showing that coal mine employment was not a contributing cause of the miner's disability.

The regulation implementing the fifteen-year presumption states that "the presumption will be considered rebutted" if the "total disability did not arise in whole or in part out of dust exposure in the miner's coal mine employment." 20 C.F.R. § 718.305(d). A prior panel of this court equated this language with showing "that the disease is not related to coal mine work." *Morrison*, 644 F.3d at 480. Other panels of this court, when interpreting identical language in an interim regulation, have not distinguished meaningfully between a "play no part" or a "rule-out" standard and the "contributing cause" standard. *See*, *e.g.*, *Tennessee Consol. Coal Co. v. Crisp*, 866 F.2d 179, 186 (6th Cir. 1989) (discussing how a doctor's opinion was "insufficient to *rule out* occupational coal dust exposure as a '*contributing cause*' to [claimant]'s respiratory disability" (emphasis added) to rebut a presumption under 20 C.F.R § 727.203(b)(3) which had an identical "did not arise in whole or in part out of coal mine employment" standard); *Gibas v. Saginaw Mining Co.*, 748 F.2d 1112, 1120 (6th Cir. 1984) ("If an employer is able to prove that pneumoconiosis *played no part* in causing a miner's disability, then the employer has satisfied the requirements of [20 C.F.R. §] 727.203(b)(3). Where, however, pneumoconiosis is a *contributing cause* to a miner's total disability, he is conclusively entitled to benefits." (emphasis added)).

Simply put, the "play no part" or "rule-out" standard and the "contributing cause" standard are two sides of the same coin. Where the burden is on the employer to disprove a presumption, the employer must "rule-out" coal mine employment as a cause of the disability. Where the employee must affirmatively prove causation, he must

_____

[4]The ALJ applied Fourth Circuit law while the Board applied Sixth Circuit law. Jt. App'x at 266 (ALJ Dec. at 2); Jt. App'x at 301 n.2 (Bd. Dec. at 2 n.2). Because Ogle's last coal mine employment and, thus, last coal dust exposure was in Kentucky, in the Sixth Circuit, this court has jurisdiction. *Walker v. Bethenergy Mines, Inc.*, 4 F. App'x 218, 220 (6th Cir. 2001) (holding that the Sixth Circuit had jurisdiction over a claim and applying Sixth Circuit law where a miner last worked in Southern Ohio despite the "great majority" of his mine employment taking place in West Virginia and the ALJ's and the Board's analysis being formulated under Fourth Circuit law). We also apply Sixth Circuit law as we did in *Walker*.

do so by showing that his occupational coal dust exposure was a contributing cause of his disability. Because the burden here is on the Fund, the Fund must show that the coal mine employment *played no part* in causing the total disability. *See Gibas*, 748 F.2d at 1120 ("If an employer is able to prove that pneumoconiosis *played no part* in causing a miner's disability, then the employer has satisfied the [rebuttal] requirements." (emphasis added)). This approach follows and applies the language found in 20 C.F.R. § 718.305(d).

No meaningful difference exists between this "played no part" standard and the ALJ's statement that "rebuttal is established by 'ruling out' the causal nexus between the miner's totally disabling lung impairment and his coal dust induced lung disease." Jt. App'x at 296 (ALJ Dec. at 32). Consequently, we hold that the ALJ did not apply an improper standard.[5]

## C. ALJ's Determinations

The Fund does not challenge the ALJ's determination that Ogle is entitled to the fifteen-year presumption. However, the Fund does challenge the ALJ's conclusion that it did not rebut that presumption of total disability due to pneumoconiosis. The Fund points to various, specific alleged errors committed by the ALJ. First, the Fund contends that the ALJ erred because he did not account for the failures of Dr. Forehand, Dr.

---

[5]New regulations implementing the 2010 legislative changes were released on September 25, 2013, with an effective date of October 25, 2013. *See* 78 Fed. Reg. 59102 (Sept. 25, 2013). This opinion is in accord with those new regulations.

The new regulations make clear that three elements in the fifteen-year presumption are susceptible to rebuttal. *See id.* at 59106 ("The Department has revised § 718.305(d) in this final rule to more clearly reflect that all three of the presumed elements may be rebutted.") However, due to the definition of legal pneumoconiosis, the three rebuttal methods are often expressed as 1) "establish[ing] that the miner does not have a lung disease related to coal mine employment" and 2) "that the miner's totally disabling respiratory or pulmonary impairment is unrelated to his pneumoconiosis." *Id.* Analogously, the new regulations make clear that "proof that a miner's disability resulted from a lung disease caused by coal dust exposure that was not pneumoconiosis [is] no longer a valid method of rebuttal because every disabling lung disease caused by coal dust exposure is legal pneumoconiosis." *Id.* Therefore, the fifteen-year presumption can be rebutted only in the two ways stated in the regulations "which encompass the disease, disease-causation, and disability-causation entitlement elements." *Id.*

These regulations also address many of the Fund's arguments regarding the rebuttal standard. *See id.* at 59105–06 (noting the *Usery* argument and laying out the rule-out versus the contributing-cause debate). The new regulations interpret the "arise in whole or in part" rebuttal standard. *See id.* at 59115, § 718.305(d)(1) (effective Oct. 25, 2013). Disability causation can be rebutted by "[e]stablishing that *no part* of the miner's respiratory or pulmonary total disability was caused by pneumoconiosis." *Id.* (emphasis added). This standard mirrors the standard that has been used by our court.

Baker, and Dr. Agarwal to account for Ogle's elevated or paralyzed left hemidiaphragm. The Fund also argues that the ALJ improperly discredited the medical opinions of Dr. Jarboe and Dr. Castle throughout his decision.

When we review determinations of credibility and the weight afforded to various medical opinions, we defer to the ALJ whenever his conclusions are supported by substantial evidence. *Consolidation Coal Co. v. Worrell*, 27 F.3d 227, 231 (6th Cir. 1994). This deference extends to whether a medical opinion is well-reasoned—a determination ordinarily left to the ALJ. *Director, Office of Workers' Compensation Programs v. Rowe*, 710 F.2d 251, 255 (6th Cir. 1983). In fact, determining whether a "doctor's report was 'sufficiently documented and reasoned[]' [is] a credibility decision we have expressly left to the ALJ." *Crisp*, 866 F.2d at 185.

### 1. ALJ's Assessments of Dr. Forehand, Dr. Baker, and Dr. Agarwal

First, the Fund asserts that the ALJ erred by crediting the opinions of Dr. Forehand, Dr. Baker, and Dr. Agarwal despite these three physicians' opinions failing to account for Ogle's elevated or paralyzed left hemidiaphragm. While the Fund is correct that the ALJ did not account for the lack of discussion of Ogle's potentially elevated or paralyzed left hemidiaphragm in the opinions of these three physicians, we do not require the ALJ to remark on every piece of evidence and every omission by a physician. Our review is whether the ALJ's decision rests on substantial evidence. *See Kirk*, 264 F.3d at 606. Here, the ALJ was determining whether the Fund had rebutted the fifteen-year presumption. Nothing in the evidence presented by these three physicians supported rebuttal of that presumption. Furthermore, the ALJ, as required, did consider all relevant evidence, which includes the physicians' reports in whole and the deposition testimony of Dr. Agarwal. *See McCain*, 58 F. App'x at 201. During Dr. Agarwal's deposition, the Fund had the opportunity to pin down Dr. Agarwal's opinion on any impact the potentially elevated or paralyzed left hemidiaphragm had on Ogle's condition. It failed to do so. While it is true that the ALJ did not discuss this omission from all of the physicians' opinions, our review cannot be so exacting as to require an ALJ to discuss every potential finding every physician could have made in the absence

of such findings in the physician's report and in the absence of questions regarding the particular matter in the deposition by the employer. Rather than review whether the ALJ has meticulously discussed every piece of evidence that may be missing, we review merely whether he has reviewed all relevant evidence, applied the proper legal standard, and reached a conclusion based on substantial evidence. Here, the ALJ credited the determinations of Dr. Forehand, Dr. Baker, and Dr. Agarwal and stated why he found them reasonable and persuasive. Under these circumstances, the ALJ has sufficiently explained why he relied on these opinions and did not err by relying on them.

### 2. ALJ's Assessments of Dr. Jarboe and Dr. Castle

The Fund also argues that the ALJ improperly discredited the medical opinions of Dr. Jarboe and Dr. Castle throughout his decision. The first error, according to the Fund, stems from the ALJ discrediting the opinions of Dr. Jarboe and Dr. Castle as contrary to the preamble to the 2001 amendments to the black lung regulations.[6] Second, the Fund contends that despite the two doctors' opinions adequately explaining the irreversible and totally disabling component of Ogle's impairment, the ALJ improperly discredited them as inadequate explanations. Third, the Fund posits that the ALJ erred in discrediting the opinions of Dr. Jarboe and Dr. Castle because they did not find legal pneumoconiosis. While an ALJ can discredit an opinion that rules out legal pneumoconiosis when he factually finds that the miner suffers from legal pneumoconiosis, here legal pneumoconiosis was presumed, not found.

Each of these arguments once again asks us to ignore the ALJ's credibility findings and to reweigh the evidence ourselves. We decline to do so. The ALJ stated in each instance why he has discredited the opinions on which the Fund relies. "The ALJ's conclusion that [one doctor]'s opinion was sufficiently reasoned but that [another doctor's opinion] was not is a matter of credibility, which we cannot revisit." *A & E*

---

[6]The preamble to the amended regulations explained the Department of Labor's "medical and scientific premises for the changes." *A & E Coal Co. v. Adams*, 694 F.3d 798, 801 (6th Cir. 2012). A prior panel of this court has approved an ALJ crediting or discrediting medical opinions based on "consisten[cy] with the medical and scientific premises underlying the amended regulations, as expressed in the preamble." *Id.* at 802.

*Coal Co. v. Adams*, 694 F.3d 798, 803 (6th Cir. 2012). Additionally, the ALJ has explained his views clearly, thereby allowing us to discern the opinions on which he relies and the reasons for his reliance. "Thus, the ALJ accurately and specifically referenced the evidence supporting his conclusions." *Id.* His determinations to credit or discredit these medical opinions based on whether they are sufficiently documented and reasoned is a credibility matter that we must leave to the ALJ. *See Moseley v. Peabody Coal Co.*, 769 F.2d 357, 360 (6th Cir. 1985); *Rowe*, 710 F.2d at 255.

On the first asserted error, the Fund argues that its experts did not "rely on negative chest x-ray findings to preclude a finding of legal pneumoconiosis, including coal dust induced lung disease" as the ALJ found. Jt. App'x at 295 (ALJ Dec. at 31). As a result, the ALJ concluded that such reliance is in opposition to the preamble to the amendments to the BLBA regulations which, according to the ALJ, state that "coal dust exposure can produce a disabling chronic obstructive lung disease, even in the absence of clinical pneumoconiosis, *i.e.* x-ray correlation of the disease." *Id.* The Fund argues that the medical opinions did not rely on these findings alone. The ALJ, however, certainly recognized that the opinions also relied on other findings as he noted that "their opinions lose probative value" "to the extent that [they] rely on negative chest x-ray findings to preclude a finding of legal pneumoconiosis." *Id.* The ALJ reviewed the evidence, determined that these two physicians relied heavily on negative x-ray findings, which are used to determine whether clinical pneumoconiosis is found, to conclude a lack of legal pneumoconiosis, and devalued the opinions to the extent they did so. We conclude that such a decision is well-reasoned and based on substantial evidence. *See Adams*, 694 F.3d at 800–01 (affirming the Board's finding that "the ALJ permissibly consulted the regulations' preamble" to discredit the opinion of a physician, Dr. Jarboe, who relied on studies discredited in the preamble).

Second, the Fund contends that despite the opinions adequately explaining the irreversible and totally disabling component of Ogle's impairment, the ALJ improperly discredited them as inadequate explanations. Here, the Fund asks us to "reweigh the evidence [and] substitute our judgment for that of the ALJ." *Kirk*, 264 F.3d at 606. We

cannot do so. *Id.* "[E]ven if we would have taken a different view of the evidence were we the trier of facts," we must affirm the ALJ's reasonable interpretation. *Ramey*, 755 F.2d at 486. Here, the ALJ stated precisely what he concluded the Fund's experts have failed to do—explain adequately the irreversible and totally disabling component of Ogle's impairment. The Fund cobbles together various statements by the physicians to argue they have done so. "Determinations of whether a physician's report is sufficiently documented and reasoned is a credibility matter left to the trier of fact." *Moseley*, 769 F.2d at 360. We defer to the ALJ's determination whether the explanations are adequate and will not disturb his reasonable findings.

The Fund's argument that the ALJ erred by discrediting an opinion that ruled out legal pneumoconiosis where legal pneumoconiosis is only presumed, rather than factually found, is flawed. This argument is based on the view that the ALJ merely presumed legal pneumoconiosis. While the fifteen-year presumption did at first allow the ALJ to presume pneumoconiosis, the Fund challenged this presumption. The Fund fought vigorously to rebut the presumption, while Ogle strived to buttress it. The Fund was able to disprove the existence of clinical pneumoconiosis, but failed to disprove the existence of legal pneumoconiosis, which was its burden. Thus, while pneumoconiosis was first presumed, not found, the ALJ nevertheless concluded that the "[e]mployer has not rebutted the existence of legal coal workers' pneumoconiosis by a preponderance of the medical evidence." Jt. App'x at 296 (ALJ Dec. at 32). Thus, the ALJ determined that it was at least as likely as not that Ogle suffered from legal pneumoconiosis. The ALJ did not err in using this determination to discredit the opinions of Dr. Jarboe and Dr. Castle, neither of whom diagnosed legal pneumoconiosis.

In sum, the ALJ did not err in concluding that the Fund failed to rebut the fifteen-year presumption.

### III. CONCLUSION

We hold that the ALJ did not improperly restrict the Fund's ability to rebut the fifteen-year presumption. Furthermore, an employer must show that coal mine employment played no part in the claimant's disability in order to rebut the presumption

that coal dust exposure caused the disability.  The ALJ's conclusion that the Fund did not rebut the fifteen-year presumption was based on substantial evidence and in accordance with applicable law.  For all of the reasons expressed in this opinion, we **DENY** the petition for review.