NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0344n.06

No. 16-4049

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 19, 2017
DEBORAH S. HUNT, Clerk

ADVENT MINING LLC,                          )
                                            )
    **Petitioner,**                         )        ON PETITION FOR REVIEW
                                            )        OF A DECISION AND ORDER
v.                                          )        OF THE UNITED STATES
                                            )        DEPARTMENT OF LABOR
RAYMOND DAVIS et al.,                       )        BENEFITS REVIEW BOARD
                                            )
    **Respondents.**                       )        **OPINION**
                                            )

Before: NORRIS, MOORE, and STRANCH, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Raymond Davis worked in various coal mines for more than twenty-seven years. By the time he retired from mining work in 2010, Davis found it difficult to walk more than thirty yards or climb more than ten stairs without losing his breath. Davis filed for and received benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.*, and the award of benefits was affirmed both by a United States Department of Labor Administrative Law Judge ("ALJ") and the Department of Labor Benefits Review Board ("Board"). Advent Mining, LLC ("Advent" or "Petitioner"), Davis's final employer, petitions for review of the Board's decision because Advent believes the decision was "irrational, unsupported by the substantial evidence of the record, and inconsistent with applicable law and/or an error of the application of the law." Pet'r Br. at 11. For the reasons set forth below, we **DENY** the petition for review.

## I. FACTS AND PROCEDURE

### A. Factual History

Raymond Davis was born in 1948 and worked in various underground coal-mine jobs for at least twenty-seven years. Pet'r App'x at 41, 47 (ALJ Dec. at 3, 9). Davis's most recent coal-mine employment was between 2005 and 2010 in Sebree, Kentucky with Advent Coal Company. *Id.* at 561 (Emp't Hist. Ex. at 1). The work at Advent was often "dusty at the face and sometimes at the feeder, where you dumped the coal." *Id.* at 41 (ALJ Dec. at 3). Davis showered at the mine almost every day because the work left him "[d]irty, covered with coal dust." *Id.* Davis's work at Advent and elsewhere included driving a car, hauling coal, bolting the roof, and mining. *Id.* The mine work required Davis to spend almost all of his time underground, lift heavy objects, and spend entire days on his feet or his knees. *Id.* He was diagnosed with diabetes in 2003 or 2004 and takes medication for knee pain, cholesterol, diabetes, and blood pressure. *Id.* at 42 (ALJ Dec. at 4). Davis also suffers from breathing problems that are so severe that he can barely lift twenty pounds, climb ten steps, or walk thirty yards without losing his breath. *Id.* at 41–42 (ALJ Dec. at 3–4). Davis was a smoker for approximately a total of a year and a half in 1969 and between 1974 and 1975. *Id.* at 42 (ALJ Dec. at 4).

### B. Procedural History

This is Davis's third claim for benefits. His first claim was denied by the District Director ("Director") on May 8, 2000, and his second claim for benefits was denied on April 26, 2007. Pet'r App'x at 43 (ALJ Dec. at 5). This claim for black-lung benefits was filed under the

Black Lung Benefits Act (the "Act" or "BLBA"), 30 U.S.C. § 901 *et seq.* in October 2010. Pet'r App'x at 130 (Benefits App. at 4). The Director issued a proposed decision and order awarding benefits on September 21, 2011. *Id.* at 179 (Proposed Dec. at 1). The Director concluded that: (1) Davis was born in 1948 and was employed as a coal miner for more than 31 years between 1972 and 2009; (2) Davis contracted pneumoconiosis as a result of his coal-mine employment; (3) the pneumoconiosis has caused Davis a breathing impairment of sufficient degree that establishes total disability within the meaning of the Act; (4) Advent Mining LLC is the coal-mine operator responsible for payments of benefits due to Davis; and (5) Davis is entitled to receive benefits individually and on behalf of his wife. *Id.* at 179–80 (Proposed Dec. at 1–2). Advent objected to the Director's findings and requested a hearing before an Administrative Law Judge. Resp't App'x at 532 (Hr'g Req. at 1). A hearing was held, and the ALJ Decision and Order awarding benefits was issued on September 25, 2015. *Id.* at 39 (ALJ Dec. at 1).

Davis testified on his own behalf under oath at the hearing. Pet'r App'x at 107 (Hr'g Tr. at 15). Davis testified that he worked about half of his nine-hour workdays at Advent near the dusty face of the mine and spent additional time driving a car hauling coal from the face of the mine to the belt. *Id.* at 108–09 (Hr'g Tr. at 16–17). The ALJ also heard testimony about Davis's physical health—for example, Davis noted that he has breathing problems that have worsened over time, has difficulty walking far distances and climbing flights of stairs, has trouble sleeping, and feels like he no longer can physically do any of the work that he did in the mines. *Id.* at 111–15 (Hr'g Tr. at 19–23). The hearing record also included as exhibits, inter alia, x-ray

interpretations by Drs. Crum and DePonte, a report by Dr. Selby, a report by Dr. Renn, a report by Dr. Myer, a report by Dr. Shipley, a report by Dr. Jarboe, and the deposition of Dr. Chavda.

After the hearing, the ALJ concluded that: (1) Davis had 27.24 years of underground coal-mine employment; (2) Davis smoked approximately one-quarter of a pack of cigarettes a day for about a year and a half; (3) Davis "established, by a preponderance of the evidence, that he is totally disabled due to a respiratory or pulmonary condition"; (4) by establishing at least fifteen years of qualifying coal mine employment and his total respiratory disability, Davis was entitled to the rebuttable presumption that he is disabled due to pneumoconiosis; (5) Advent was unable to rebut the presumption that Davis is disabled due to pneumoconiosis; and (6) Davis was entitled to benefits under the Act. Pet'r App'x at 47, 43, 57, 68–69 (ALJ Dec. at 9, 5, 19, 30–31).

Advent appealed to the Benefits Review Board, which affirmed the ALJ's decision on August 31, 2016. Pet'r App'x at 18 (Bd. Dec. at 10). The Board "affirmed the administrative law judge's findings that claimant established at least fifteen years of qualifying coal mine employment and the existence of a totally disabling respiratory impairment." *Id.* at 14 (Bd. Dec. at 6). The Board further "affirm[ed] the administrative law judge's determination that employer failed to rebut the [presumption of total disability due to pneumoconiosis] by establishing that claimant does not have pneumoconiosis." *Id.* at 16–17 (Bd. Dec. at 8–9). Advent filed a timely notice of appeal and petition for review.

## II. ANALYSIS

### A. Standard of Review

We review decisions of the Board under a mixed standard. We review the Board's legal conclusions de novo. *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1068 (6th Cir. 2013). "While we will not vacate the Board's decision unless the Board has committed legal error or exceeded its scope of review, we review the ALJ's decision to determine whether the ALJ applied the applicable law correctly to reach a conclusion supported by substantial evidence." *Id.* (citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1068–69 (quoting *Kolesar v. Youghiogheny & Ohio Coal Co.,* 760 F.2d 728, 729 (6th Cir. 1985)). "We do not reweigh the evidence or substitute our judgment for that of the ALJ." *Id.* at 1069 (quoting *Tenn. Consol. Coal Co. v. Kirk*, 264 F.3d 602, 606 (6th Cir. 2001)). Indeed, we need not even conclude that we would have viewed the evidence as the ALJ viewed it were we the trier of facts. *Ramey v. Kentland Elkhorn Coal Corp.*, 755 F.2d 485, 486 (6th Cir. 1985). An ALJ satisfies the substantial evidence standard if she "has adequately explained why [s]he weighed the evidence as [s]he did." *Ogle*, 737 F.3d at 1069 (citing *Morrison v. Tenn. Consol. Coal Co.* 644 F.3d 473, 478 (6th Cir. 2011)). We have previously held that "[a] remand or reversal is only appropriate when the ALJ fails to consider all of the evidence under the proper legal standard or there is insufficient evidence to support the ALJ's finding." *McCain v. Dir., Office of Workers Comp. Programs*, 58 F. App'x 184, 201 (6th Cir. 2003).

**B. The Black Lung Benefits Act**

The Black Lung Benefits Act provides benefits to coal miners who have developed pneumoconiosis due to their prolonged exposure to coal dust. *See* 30 U.S.C. § 901(a). The BLBA entitles an individual to benefits if he is (1) a coal miner (2) suffering from pneumoconiosis (3) that was caused by his coal mine employment and (4) that caused (5) a total disability. *See* 20 C.F.R. § 725.202(d); *see also Buck Creek Coal Co. v. Sexton*, 706 F.3d 756, 758 (6th Cir. 2013). Pneumoconiosis is a "chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b). There are two types of pneumoconiosis: clinical pneumoconiosis and legal pneumoconiosis. Clinical pneumoconiosis "refers to certain lung diseases that the medical community recognizes to be caused by exposure to coal dust." *Cent. Ohio Coal Co. v. Dir., Office of Workers' Comp. Programs*, 762 F.3d 483, 486 (6th Cir. 2014). Legal pneumoconiosis "is a broader and less definite term that refers to any chronic lung disease that was caused *in this instance* by exposure to coal dust." *Id.*

When "a miner was employed for fifteen years or more in one or more underground coal mines" and "demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis." 30 U.S.C. § 921(c)(4). Once the fifteen-year presumption is in effect, the burden shifts to the employer to rebut the presumption by showing that "(A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did

6

not arise out of, or in connection with, employment in a coal mine." *Morrison v. Tenn. Consol. Coal Co.*, 644 F.3d 473, 479 (6th Cir. 2011) (quoting 30 U.S.C. § 921(c)(4)).

Advent argues that the Board erred in affirming the ALJ's decision for three reasons. First, Advent disagrees with the ALJ's and the Board's conclusions that Davis has a totally disabling pulmonary or respiratory impairment. Second, Advent argues that the Board erred in affirming the ALJ's finding that Davis was entitled to invoke the fifteen-year rebuttable presumption that he is totally disabled due to pneumoconiosis. Third, Advent argues in the alternative that, should the fifteen-year presumption apply, the Board erred in affirming the ALJ's conclusion that Advent failed to rebut the presumption by showing that Davis did not suffer from clinical or legal pneumoconiosis.

## C. The Board Correctly Affirmed The ALJ's Finding of Totally Disabling Impairment

Advent first argues that the Benefits Review Board erred in affirming the ALJ's finding that Davis suffers from a totally disabling pulmonary or respiratory impairment. Petitioner takes issue with several of the ALJ's findings relating to Davis's pulmonary or respiratory impairment including that: (1) the ALJ weighed impermissibly the opinion of Dr. Chavda over Drs. Jarboe and Selby; (2) the ALJ determined incorrectly that the medical opinion evidence establishes a totally disabling pulmonary or respiratory impairment; (3) in light of the pulmonary-function and arterial-blood-gas-study evidence, Davis failed to meet his burden by a preponderance of the evidence that he has a totally disabling pulmonary or respiratory impairment; and (4) the ALJ erred in finding that Advent was required to disprove a finding of total disability. Pet'r Br. at 1.

Pursuant to 20 C.F.R. § 718.204, "a miner shall be considered totally disabled if the miner has a pulmonary or respiratory impairment which, standing alone, prevents or prevented the miner: (i) From performing his or her usual coal mine work; and (ii) From engaging in gainful employment in the immediate area of his or her residence requiring the skills or abilities comparable to those [of his prior mine employment]." 20 C.F.R. § 718.204(b)(1). There are a number of methods that may be used to demonstrate total disability including arterial-blood-gas tests, pulmonary-function tests, cardiac examinations, and medical opinions. *Id.* at § 718.204(b)(2). An expert conclusion regarding total disability may be made by "a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques" provided that the physician "concludes that a miner's respiratory or pulmonary condition prevents or prevented the miner from engaging in employment" as previously described. *Id.* at § 718.204(b)(2)(iv).

Advent first argues that the ALJ gave too much weight to Dr. Chavda's opinion that Davis suffers from pneumoconiosis while impermissibly discrediting the opinions of Drs. Jarboe and Selby that he does not. We disagree; we conclude that substantial evidence supports a finding of total disability and that the ALJ weighed the competing medical opinions and provided sufficient explanation for her conclusion that Dr. Chavda's opinion was more credible than the opinions of Drs. Jarboe and Selby. Advent takes issue with a couple of Dr. Chavda's statements. First, Advent argues that Dr. Chavda's statement that "I concluded that [Davis] did not have total pulmonary disabilities" contradicts his ultimate conclusion and therefore calls the credibility of that conclusion into doubt. Second, Advent points to Dr. Chavda's answer of "yes"

8

to the question whether it is his "opinion that [Davis] still has enough pulmonary function to do the job that he told you he had to do" as another example of Dr. Chavda contradicting himself. But the record indicates that those statements were taken out of context and that the ALJ considered the statements along with the entirety of the record. As the ALJ noted, both of the statements were made *before* Dr. Chavda had reviewed all of the medical test results. Pet'r App'x at 56 (ALJ Dec. at 18). The ALJ concluded that Dr. Chavda's statements do "not taint his opinion as he also stated that Claimant is totally disabled" and that "his opinion is based on reliable objective testing and is consistent with the evidence available to him. I therefore find his opinion on disability to be documented and reasoned." *Id.*

While Advent urges us to conclude that the opinions of Drs. Selby and Jarboe should be given greater weight than the opinion of Dr. Chavda, we find no factual or legal justification for doing so. The ALJ's discussion of the medical opinions was reasoned and specific, and her conclusions are supported by the record. She concluded that "the opinions of Drs. Selby and Jarboe are not supported by the evidence and are poorly reasoned. Unlike Dr. Chavda, neither Dr. Jarboe nor Dr. Selby demonstrated adequate understanding of Claimant's last coal mine employment duties, which required heavy labor." *Id.* The record indicates that Dr. Chavda was far more familiar with Davis's responsibilities as a coal miner at Advent than Drs. Jarboe and Selby, and that familiarity properly informed Dr. Chavda's opinions. It was not error for the ALJ therefore to credit Dr. Chavda's opinions over Drs. Selby and Jarboe. A fair reading of the record suggests that facts exist on both sides of the question whether Davis suffers from a totally disabling impairment. For example, the doctors had varying interpretations of Davis's

9

pulmonary-function tests, blood-gas studies, and x-rays. However, as the Board correctly noted, "[t]he determination of whether a physician's opinion is reasoned and documented is within the discretion of the administrative law judge, as trier of fact." Pet'r App'x at 14 (Bd. Dec. at 6). The Board therefore "affirm[ed] the administrative law judge's finding that the opinion of Dr. Chavda is reasoned and documented and sufficient to satisfy claimant's burden of proof." *Id.* Although Advent asks us to weigh the evidence and come to a conclusion different from that reached by the Board and the ALJ, we decline to do so. Because the ALJ's decision regarding the credibility of the medical-opinion testimony is supported by the record, and because her conclusion is thoughtfully and thoroughly explained, we conclude that the Board properly affirmed that decision.

**D. The Board Correctly Affirmed The ALJ's Application of the Fifteen-Year Presumption**

Advent next argues that the Benefits Review Board erred in affirming the ALJ's application of the fifteen-year presumption because Davis failed to prove by a preponderance of the evidence that he suffers from a totally disabling pulmonary or respiratory impairment. Davis responds that Advent's arguments are repetitive of their arguments discussed *supra* and that the record establishes the evidence necessary to apply the presumption.

A black-lung claimant is entitled to a presumption that he is disabled due to pneumoconiosis if he establishes that:

> (i) The miner engaged in coal-mine employment for fifteen years, either in one or more underground coal mines, or in coal mines other than underground mines in conditions substantially similar to those in underground mines, or in any combination thereof; and

10

      (ii) The miner or survivor cannot establish entitlement under § 718.304 by means of chest x-ray evidence; and

      (iii) The miner has, or had at the time of his death, a totally disabling respiratory or pulmonary impairment established pursuant to § 718.204, except that § 718.204(d) does not apply.

20 C.F.R. § 718.305(b); 30 U.S.C. § 921(c)(4).  The ALJ concluded that Davis "has established at least fifteen years of qualifying coal mine employment, and also has established that he is totally disabled from a respiratory perspective," entitling him to "invoke the rebuttable presumption that he is disabled due to pneumoconiosis."  Pet'r App'x at 57 (ALJ Dec. at 19).  We agree with the ALJ's conclusion.  Davis has worked in underground mines for approximately twenty-seven years, the record does not indicate that he can establish entitlement through a chest x-ray interpretation, and as discussed in the previous section, he suffers from a totally disabling respiratory or pulmonary impairment.  We therefore conclude that the Board properly affirmed the ALJ's finding that Davis is entitled to the fifteen-year presumption.

**E.   The Board Correctly Affirmed The ALJ's Finding that Advent Failed to Rebut the Presumption**

      Advent argues in the alternative that, should the fifteen-year presumption apply, the Board erred in affirming the ALJ's finding that Advent failed to rebut the presumption by establishing that Davis did not have clinical or legal pneumoconiosis.  Davis responds that Advent failed to rebut the presumption of pneumoconiosis because much of the evidence on which Advent relies suffers from deficiencies and because the medical opinion evidence that the ALJ relied on is supported by substantial evidence in the record.

The ALJ correctly concluded that, once Davis proved that he was entitled to the fifteen-year presumption of pneumoconiosis, the burden shifted to Advent "to demonstrate that Claimant does not have clinical or legal pneumoconiosis." Pet'r App'x at 64 (ALJ Dec. at 26). Advent takes issue with the ALJ giving less weight to the testimony of several doctors who concluded that Davis did not have clinical pneumoconiosis because that testimony conflicted with some of the more recent medical evidence. Advent points to no case from this or any other circuit holding that it is impermissible for an ALJ to give greater weight to more recent evidence of legal and clinical pneumoconiosis. We have previously held that "[r]ecent evidence is particularly important in black lung cases, where because of the progressive nature of pneumoconiosis, more recent evidence is often accorded more weight." *Crace v. Kentland-Elkhorn Coal Corp.*, 109 F.3d 1163, 1167 (6th Cir. 1997). It was therefore not reversible error for the ALJ to discount medical opinions that were based on older medical-test data and to give greater weight to more recent medical tests and opinions.

Advent also argues that the ALJ gave short shrift to the evidence discussed by Drs. Selby and Jarboe of Davis suffering from diabetes, obesity, sleep apnea, and bronchial asthma. We disagree with Advent's characterization of the ALJ's decision. After conducting a thorough review of the record, the ALJ determined that "Dr. Jarboe impermissibly relied on pulmonary function studies to conclude that Claimant's hypoxemia, as shown on his blood gas studies, is not due to pneumoconiosis . . . without sufficiently explaining how he concluded that Claimant's asthma was not substantially aggravated by coal dust exposure." Pet'r App'x at 67 (ALJ Dec. at 29). Regarding Dr. Selby, the ALJ concluded that "Dr. Selby did not adequately explain how he

12

concluded that pneumoconiosis played no part in causing Claimant's hypoxemia, even if obesity, deconditioning and sleep apnea also played a role. Finally, their opinions, that Claimant's impairment is caused by possible sleep apnea rather than pneumoconiosis, is speculative and not grounded in the record." *Id.* at 68 (ALJ Dec. at 30).

We agree with the ALJ that there is insufficient evidence to rebut the fifteen-year pneumoconiosis presumption. Although some of the evidence is in conflict, we cannot conclude on the record before us that the ALJ impermissibly erred in finding that Advent failed to rebut the fifteen-year presumption. The ALJ considered a significant record—that included Davis's testimony, medical-opinion testimony, x-rays, and other medical tests. Substantial evidence in the record supports the ALJ's finding regarding the fifteen-year presumption.

## III. CONCLUSION

Upon review of the record, we conclude that the ALJ has applied the proper legal standards and that substantial evidence supports the ALJ's finding. Therefore, for the reasons set forth above, we **DENY** the petition for review.