NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0130n.06

Case No. 24-3244

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Mar 06, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| ISLAND CREEK COAL COMPANY, | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW OF |
| v. | ) | AN ORDER OF THE BENEFITS |
| | ) | REVIEW BOARD, UNITED |
| DIRECTOR, OFFICE OF WORKERS' | ) | STATES DEPARTMENT OF |
| COMPENSATION PROGRAMS, U.S. | ) | LABOR |
| DEPARTMENT OF LABOR; DARLENE H. | ) | |
| HUGHES, o/b/o Billy Ray Hughes, decd., | ) | |
| | ) | OPINION |
| Respondents. | ) | |
| | ) | |

BEFORE: SILER, KETHLEDGE, and BUSH, Circuit Judges.

**SILER, Circuit Judge.** For over a decade, Billy Ray Hughes ("Hughes") worked in Kentucky's coal mines, including as a repairman for Island Creek Coal Company ("Island Creek"). Hughes filed for disability benefits under the Black Lung Benefits Act ("the Act"), 30 U.S.C. §§ 901–45, claiming that he suffered from complicated pneumoconiosis, which would create an irrebuttable presumption of total disability. Despite an initial denial, a second Administrative Law Judge ("ALJ") concluded that computed tomography ("CT") scan readings revealed a stable lesion exceeding one centimeter, satisfying the standard for complicated pneumoconiosis. The Benefits Review Board ("Board") affirmed. Island Creek contends the ALJ lacked adequate support for that finding and improperly favored one expert over another. We disagree. Because substantial evidence supports the ALJ's determinations, we **DENY** Island Creek's petition for review.

**I.**

In 2012, Hughes filed a claim for benefits under the Act, alleging that prolonged coal dust exposure led to respiratory impairments consistent with pneumoconiosis. Although the district director initially awarded him benefits, Island Creek challenged Hughes's entitlement, triggering a formal hearing before an ALJ. In 2016, ALJ Paul C. Johnson, Jr. denied Hughes's claim, finding insufficient evidence of either simple or complicated pneumoconiosis or a totally disabling respiratory impairment.

Subsequently, Hughes sought modification under 20 C.F.R. § 725.310(a), alleging a "mistake in determination of fact" and presenting newly obtained CT scan interpretations from 2014 to 2021. The critical new evidence came from Dr. James Brandon Crum, a board-certified radiologist and B Reader with specialized research on progressive massive fibrosis in coal miners. Dr. Crum identified a stable 1.1 centimeter nodule in Hughes's left lung across multiple scans. Based on the nodule's size, stability, and lack of calcification, Dr. Crum concluded it indicated complicated pneumoconiosis rather than an infection or cancer. In response, Island Creek presented CT interpretations from Dr. Danielle Seaman, a board-certified radiologist with advanced cardiothoracic imaging fellowships. She measured the lesion at only five to eight millimeters and found no other evidence of complicated pneumoconiosis.

ALJ John P. Sellers, III held a telephonic hearing in 2022. The record included prior x-rays, new CT scans, and treatment records—many from hospital radiologists screening for cancer rather than black lung. Subsequently, ALJ Sellers granted Hughes's modification request. While adopting ALJ Johnson's finding of only 10.21 years of qualifying coal mine employment, ALJ Sellers concluded the CT scan evidence established complicated pneumoconiosis. The ALJ

credited Dr. Crum's detailed analysis and omission of alternative causes over Dr. Seaman's less extensive explanations.

The Board affirmed, holding that the ALJ adequately weighed the CT scan evidence and explained his reasons for crediting Dr. Crum. The Board noted that Island Creek had not specifically challenged the ALJ's finding that Dr. Seaman's readings were insufficiently explained or "that the CT scan evidence outweighs the contrary x-ray and medical opinion evidence." During these proceedings, Hughes died in 2023, and his widow continued his claim for survivor's benefits. Island Creek then filed a petition for review in this court.

## II.

We review the Board's legal conclusions de novo and examine whether the Board properly applied the deferential "substantial evidence" test to the ALJ's findings. *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 754–55 (6th Cir. 2019) (citing *Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 257 (6th Cir. 2018); 33 U.S.C. § 921(b)(3)). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bryan*, 937 F.3d at 755 (citation omitted).

## III.

The Act provides compensation to coal miners who become totally disabled by pneumoconiosis arising from coal mine employment. 30 U.S.C. § 901(a); 20 C.F.R. § 718.1. Pneumoconiosis includes both "simple" and "complicated" forms. 20 C.F.R. § 718.304. A finding of complicated pneumoconiosis—sometimes referred to as progressive massive fibrosis—triggers an irrebuttable presumption of total disability. 20 C.F.R. § 718.304; 30 U.S.C. § 921(c)(3). One may demonstrate complicated pneumoconiosis by x-ray evidence of one or more large opacities

greater than one centimeter or by "equivalent diagnostic means," such as CT scans, autopsy, or biopsy. 20 C.F.R. § 718.304(a)–(c); *Gray v. SLC Coal Co.*, 176 F.3d 382, 389 (6th Cir. 1999).

A miner may seek modification of a denial by showing either "a change in conditions" or "a mistake in a determination of fact." 20 C.F.R. § 725.310(a); *Consolidation Coal Co. v. Worrell*, 27 F.3d 227, 230 (6th Cir. 1994) (per curiam). The ALJ must consider all relevant evidence— both old and new—during this de novo review. *See id.*; *O'Keeffe v. Aerojet-Gen. Shipyards, Inc.*, 404 U.S. 254, 256 (1971).

## IV.

Island Creek contends that the ALJ's determination of complicated pneumoconiosis was not supported by substantial evidence because (1) the ALJ failed to adequately consider and discuss all relevant evidence, including hospital CT scans showing smaller nodule measurements and (2) the ALJ erred in crediting Dr. Crum's qualifications over Dr. Seaman's in interpreting CT scans. Neither argument warrants reversal.

## A.

Dr. Crum identified a stable 1.1 centimeter nodule across multiple scans, noted its noncalcified appearance, and explained why these characteristics, combined with Hughes's coal dust exposure, were more consistent with complicated pneumoconiosis than cancer or infection. The ALJ provided three reasons for crediting Dr. Crum's CT scan readings over Dr. Seaman's: (1) Dr. Crum's specialized experience with black lung disease, (2) the superior detail and explanation in his readings, and (3) consistency with treatment records. Each reason is supported by substantial evidence.

First, Island Creek challenges the ALJ's assessment of the experts' qualifications, arguing Dr. Crum's curriculum vitae does not demonstrate superior expertise in CT interpretation.[1] This argument mischaracterizes the ALJ's finding and ignores the other valid reasons given for crediting Dr. Crum's opinion.

The ALJ did not find Dr. Crum generally more qualified to read CT scans. Rather, he found Dr. Crum's specific research and experience with coal workers' pneumoconiosis gave him "superior qualifications when it comes to identifying the presence of complicated pneumoconiosis." This finding is supported by Dr. Crum's documented research and work with the National Institute for Occupational Safety and Health studying black lung disease.[2] As we have observed, we tend not to reweigh credibility determinations when the ALJ's decision is reasonable. *See Young v. Island Creek Coal Co.*, 947 F.3d 399, 408 (6th Cir. 2020) (citing *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1072 (6th Cir. 2013)).

More importantly, the ALJ did not rest his decision solely on qualifications. Island Creek does not challenge the ALJ's finding that Dr. Crum's analysis was "more detailed" and better explained than Dr. Seaman's. As the ALJ noted, while Dr. Seaman identified nodules but concluded they were not pneumoconiosis, she "provided no explanation for how she reached this conclusion and provided no alternate etiology for the nodule." In contrast, Dr. Crum provided detailed explanations for why the nodule represented complicated pneumoconiosis rather than other conditions, discussing its stability over time and lack of calcification. This alone provides

---

[1] The Board declined to address Island Creek's challenge to the ALJ's finding about Dr. Crum's superior qualifications, concluding that "any error in reaching that finding is harmless" because the ALJ's other reasons for crediting Dr. Crum were sufficient.

[2] Island Creek also criticizes the ALJ for referencing Dr. Crum's publications, which were not formally admitted. This reliance was peripheral. *See Dixie Fuel Co. v. Dir., OWCP*, 820 F.3d 833, 846 (6th Cir. 2016) (ALJ may take official notice of publicly available medical publications).

substantial evidence supporting the ALJ's decision to credit Dr. Crum. *See Island Creek Coal Co. v. Maynard*, 87 F.4th 802, 811 (6th Cir. 2023) (credibility determinations based on detail and reasoning of medical opinions are for the ALJ to make).

Third, substantial evidence supports the ALJ's conclusion that Dr. Crum's readings aligned with the treatment records. While Island Creek points to some treatment CT scans measuring nodules under one centimeter, other scans showed larger measurements. The ALJ reasonably credited Dr. Crum's detailed explanation of why some treatment readings may have understated the mass's size due to quality issues. We cannot reweigh this evidence. *See Big Branch Res.*, 737 F.3d at 1074.

### B.

Island Creek argues that the ALJ failed to satisfy the statutory mandate to consider "all relevant evidence," particularly certain treatment records reflecting nodules less than a centimeter.[3] The record shows otherwise.

The ALJ conducted a thorough analysis of the medical evidence, discussing x-rays, CT scans, medical opinions, and treatment records. It is clear that the ALJ acknowledged the hospital scans, as he noted they were primarily taken for malignancy screening purposes and thus did not conclusively address pneumoconiosis. The ALJ also accepted Dr. Crum's rationale that suboptimal imaging factors or variations in measurement technique could yield smaller readings.

While the ALJ may not have specifically discussed every piece of evidence, he was not required to do so. *See Big Branch Res.*, 737 F.3d at 1072. The decision reflects careful

---

[3] The Board's decision states: Island Creek "does not identify any treatment record CT scan in which the radiologist identified the left lung mass as less than one centimeter." Island Creek insists that it did identify the relevant exhibits—albeit in general references—so it was error to treat the matter as unpreserved. Regardless of any alleged procedural shortcomings, the ALJ's own approach moots this concern. *See Dixie Fuel Co.*, 820 F.3d at 843–44.

consideration of the conflicting evidence and provides a rational explanation for crediting Dr. Crum's interpretation. No more is required. *See Jericol Mining, Inc. v. Napier*, 301 F.3d 703, 712 (6th Cir. 2002).

The petition for review is **DENIED**.